The complainant's counsel may prepare an order for the receiver.

CHARLES F. MAYER, for Complainant.
T. P. SCOTT, for Defendants.

[The decree, in this case, was affirmed upon appeal, by the Court of Appeals.]

WILLIAM M'KIM AND WILLIAM KENNEDY
vs.
WILLIAM MASON ET AL.

} DECEMBER TERM, 1852.

[FIXTURES—MECHANICS' LIEN LAWS.]

A MORTGAGE was executed to a manufacturing company, and the affidavit required by the 1st section of the Act of 1847, ch. 271, was made by the agent and treasurer of the Company. HELD—that this was a sufficient compliance with the provisions of that Act.

Where property on which machinery is constructed is subject to a lien or incumbrance prior to the commencement of the building in which the machinery is placed, the lien of the mechanic must be subordinate to the prior incumbrance.

Where a mechanic filed his claim against certain parties, and the *scire facias* was issued against them only, and the notice provided for by the 17th section of the Act of 1838, ch. 205, was not given, but waived by consent, the judgments recovered by the mechanic cannot affect the rights or interests of third persons having liens on the property against which the claim was filed.

Where a mortgage contains no covenant that the mortgagor shall continue possessed of the land, with power to take the rents, profits, and issues, until default made, he cannot be regarded as the tenant of the mortgagee.

A steam-engine and boiler placed in and affixed to a cotton factory, and constituting a part of the motive power thereof, are fixtures, and, as between mortgagor and mortgagee, belong to the latter, though placed in the building after the execution of the mortgage.

Where a mortgage contains no express stipulation, one way or the other,

upon the subject, actual fixtures, of course, pass under it, and as to improvements *doubtful* in their nature, the inquiry is, whether they have become part of the realty ? If they have, they must be considered as done by way of permanent improvement, for the general benefit of the estate, and not for its temporary enjoyment, and they pass by the mortgage.

A mortgage was executed of the real estate of a manufacturing company, consisting of land and the buildings thereon, without any express stipulation as to fixtures. HELD—that machinery subsequently placed in the buildings, so as to become fixtures, passed by it, and enured to the benefit of the mortgagee.

Machinery in a cotton mill, used for the purpose of manufacturing cotton, such as looms, cards, spinning-frames, speeders, &c., and fastened to the building so as to secure their uniform and steady operation, are not fixtures.

As between mortgagor and mortgagee, if the annexation be such as to make it impossible to disunite the personal from the real estate without injury to both, and especially without injury to the latter, the personal will be regarded as real estate, though not affixed *perpetui usus causâ*.

As between such parties, the question is whether the thing so claimed to be a fixture is so attached as to become parcel of the freehold ; and this is a question of fact depending on the mode of annexation to the soil or fabric of the house, and the extent to which it is united to them.

The ancient rigor of the rule in regard to fixtures has been mitigated in modern times, and the tendency and spirit of recent decisions is to a still greater relaxation, not only as between landlord and tenant, but also as to parties between whom it has hitherto been applied with more strictness.

Where the holders of the liens on machinery and fixtures, and on the building, are different parties, and rent has been received for the use of the whole property, by the trustees before the sale under the decree, in apportioning such rent, there should be given to the holders of the lien on the machinery such proportion as according to proof they would be entitled to in view of the greater wear and tear of the machinery.

Where a mortgagee purchased the mortgaged premises at the trustees' sale, and took the property wholly discharged from the lien of the mechanic, a purchaser, whoever he may be, from such mortgagee, must take a title equally exempt from the lien.

The lien of the mechanic under the Act of 1838, ch. 205, and its supplements, for work and labor and materials furnished, is in subordination to prior incumbrances, but subject to such incumbrances, the mechanic has a lien on the building and the ground covered by it.

By the 4th section of the Act of 1845, ch. 176, machines are rendered subject to the lien "*in like manner*" as buildings are made subject thereto by the original Act, and hence the lien of the machinist must be subordinate to prior incumbrances.

Proceedings under the lien laws, though in the nature of proceedings *in rem*, are not purely of that character, and unless the notice by advertisement

required by the 17th section of the Act of 1838, ch. 205, be given, the judgment must be limited in its operation to the parties warned by the preceding section.

But if the proceedings are strictly *in rem*, notice, either actual or constructive, is essential to the validity of the judgment against all the world.

Constructive notice is as essential to the validity of a judgment *in rem*, as actual notice is to that of a judgment *in personam ;* a proceeding professing to determine the right of property without notice actual or constructive, is a mere arbitrary edict, not to be regarded anywhere as the judgment of a court.

Where a judgment is obtained under the mechanics' lien laws, without notice given as provided by the 17th section of the Act of 1835, ch. 205, a mortgagee of the property, who has no notice, either actual or constructive, would not have the right to appeal from such judgment.

None but parties to the judgment or decree appealed from, have the right of appeal, and the execution of such judgment or decree cannot be stayed or delayed unless the party *against whom* it was rendered or passed gives bond.

———

[The principal question arising in this case was, whether certain machinery furnished by various parties and put up in a cotton mill, was or was not to be regarded as fixtures. The machinery furnished by the Messrs. Denmead, referred to in the opinion, consisted of a steam-engine of 75-horse power, with the boilers, tanks, and appurtenances, and constituted a part of the motive power of the machinery of the mill, the other part being water power. The three boilers were put up with brick, resting on foundations dug in the earth, in a house built for that purpose exclusively, and to remove them it would be necessary to take down all but its side walls and roof. The engine was set on a very solid permanent foundation, and to keep it and the fly-wheel secured, a hole was bored down through the rock, and the pinion block was cemented with lead, and bolted to a large stone in the foundation. The engine rested on two long sills of wood, to which it was fastened with bolts. These sills rested on a stone foundation, to which they were bolted. The iron segments were fastened to the water-wheel by bolts running through the wheel. The water-wheel was connected to its shaft: at each end of the shaft is a gudgeon fastened into the shaft and resting in a

cast iron box secured to the head-blocks, and the head-blocks rest on a stone foundation, resting on the earth. The steam-pipe passed through each room of the mill, and was fastened by bolts running through each girder, and having a hook at the end on which the pipe rested, but is not fastened to them. The tanks were set on the floor of the first and second stories. The other appurtenances were a set of elevator irons, eighty-four wrought iron shafts, with cast iron pulleys, hangers, couplings, &c. The elevator irons were set into a groove cut into the ends of the joists, and this was all the fastening they had. The wrought iron shafts rest in hangers bolted to the building and secured in the flanges by caps screwed to the hangers. The pulleys were fastened to shaftings which are attached to the cards. The Messrs. Denmead also furnished certain large duck looms, which were fastened to the floors of the mill by screws.

The machinery furnished and claimed by the Savage Manufacturing Company, consisted of the machinery used in the various rooms of the mill, such as speeders, cards, looms, twisters, spinning-frames, willow, mule-beamer, spreader, balling machine, spoolers, &c. The willow was on the second floor, bolted through the floor, and the ceiling of the first floor. The cards were on the second floor and fastened by screws $2\frac{1}{2}$ inches long, which went through the first floor into the second floor, consisting of joists. The fastening of the other machinery was in a similar manner. It was so fastened to keep it in its place and prevent it from moving about. Various witnesses testified that this machinery could be removed with care, without injury to itself or serious injury to the building in which it was placed. It was further proved that such machinery was regarded as personal property, was insured separate from the building, and was frequently owned by different parties. The business carried on in the factory was the manufacture of cotton duck. The other facts of the case are all sufficiently stated in the opinion of the Chancellor.]

The Chancellor :

This case, which comes before the Court, upon exceptions to the report of the Auditor, presents several questions of interest, one of which, at least, is admitted on all hands to be involved in much perplexity and doubt. That no clear and well-defined rule can be extracted from the adjudged cases, in reference to the law of fixtures, must be conceded; and it is by no means my purpose to attempt to perform a task, which certainly has not hitherto been performed in a manner which has met with general approval.

The counsel, by whom the rival claimants in this case are represented, have certainly displayed great research in collecting the authorities upon the subject, and they have been explained and commented on, in the argument, with unusual discrimination and ability.

The proceedings show that the Powhatan Manufacturing Company, being indebted to the Bank of Baltimore in a large sum of money; for the purpose of securing the payment thereof, executed to the Bank, on the 24th of March, 1841, a mortgage of certain lands, tenements, hereditaments, and leasehold estates, situate, and lying in Baltimore County, "together with all the buildings and improvements on said land, including the mill, factory, dwelling, and other houses thereon erected, made or being," &c., "and all the machinery and fixtures in said mill, or factory being," &c. The condition was, that the mortgagor should pay the debt as required by the mortgage, and in case of default, then it was declared to be lawful for the mortgagee to procure, by the decree of any court of competent jurisdiction, a sale to be made of the mortgaged property, for the payment of the mortgage debts and costs.

Prior to the date of this mortgage, to wit, on the 5th of February, 1828, there had been conveyed to the mortgagor ten acres of land, or thereabouts, which land was not embraced in the deed to the Bank. The Bank's claim, as stated by the Auditor, and marked claim No. 1, amounted, on the 9th of July, 1851, the date of the trustee's sale, to the sum of $27,535 59, whilst the dividend allowed upon it, in the accom-

panying account, A, is $24,427 27, being a deficiency of something upwards of $3,000.

On the 15th of November, 1845, the Powhatan Company, by its deed of that date, conveyed the mortgaged premises and the ten acres to William Mason, and on the same day Mason executed a mortgage to James Wilson, of all the property embraced in the mortgage of the Powhatan Company to the Bank, together with the ten acres which were not included therein.

Subsequently, in the years 1847 and 1848, Mason erected a new cotton mill on the premises, for manufacture of cotton duck, and in this mill there was put machinery, manufactured by the Savage Manufacturing Company, and other parties.

The record shows that on the 13th of August, 1846, an agreement was entered into between Mason and the Savage Manufacturing Company, by which the latter stipulated for the building of cotton machinery, at certain prices for the former, it being a part of the agreement, that the machinery itself, when built, should be pledged for the payment of the notes given therefor.    Mason, the elder, having afterwards formed a partnership with William Mason, Junior, and Henry A. Barling, under the name and style of William Mason and Sons, these three parties, by their deed dated the 22d of February, 1848, conveyed by way of mortgage, certain pieces of said machinery, which are enumerated and described in the instrument to the Savage Company, to secure the payment of the money.    An objection has been taken to this mortgage, upon the ground that the affidavit required by the 1st section of the Act of 1846, ch. 271, was not made by the mortgagee.

The affidavit was, in fact, made by George Williams, agent and treasurer of the Company, and this, I think, is quite sufficient to rescue it from the objection, under the provisions of the 2d section of the supplement to the original Act, passed at December Sessions, 1847, ch. 305.    The objection, though thrown out in the argument, was not much insisted on.

In the Auditor's statement of claims, those of the Savage Manufacturing Company, which have been assigned to other

parties, are numbered 6 and 7. Adam and William Den-
mead, whose claims are numbered 8 and 9, supplied portions
of the machinery. This consisted, with the exception of some
looms, of the motive power. According to the proof, there
was a steam-engine, with three boilers, tanks, and appurte-
nances, which were put up and placed upon the premises in
the mode pointed out by the witnesses, Barling & Hedrick.
The Messrs. Denmead claim to have a lien on this machinery
under the mechanics' lien law, and upon the footing of judg-
ments recovered upon a proceeding in Baltimore County
Court, in September, 1849, under the lien law passed at
December Sessions, 1838, ch. 205. It is insisted on their
part, that these judgments are in the nature of proceedings *in
rem*, and binding and conclusive on all the world.

So far as the rights of these creditors depends upon the
cases relating to the lien of mechanics and others upon build-
ings, the decision of this Court in the case of *Jones* vs. *Hancock*,
1 *Maryland Ch. Decisions*, 187, is conclusive against them, as
respects prior incumbrances. The property upon which the
machinery in question was constructed, was subject to a lien
or incumbrance prior to the commencement of the building in
which the machinery was placed, and consequently so long as
the case of *Jones* vs. *Hancock* remains unreversed, the lien
given to the mechanic must be deferred to the prior incum-
brancer.

I have not deemed it necessary to look into the authorities,
to see how far the proceedings authorized by the act of 1838
can give to the judgment which may be rendered for the
claim, the quality of a judgment *in rem*, because the records
of these judgments show that these creditors not only have not
adopted the proceedings by which the rights of third parties
could be affected, but they, by agreement with the defendant's
counsel, have expressly waived it.

The claim of the Messrs. Denmead was filed against William
Mason, William Mason, Jr., and Henry A. Barling, and the
*scire facias* authorized by the 14th section of the statute, was
issued against them only. But the legislature contemplated

that other parties might be interested, and care was taken that notice should be given to such other parties, that they might come in and protect their rights ; and hence the 17th section provides that the sheriff to whom the writ of *scire facias* may be directed, shall give notice thereof to all other claimants and persons interested, by advertisement in two daily newspapers published in the city of Baltimore, and at least ten days before the return day of the writ. The records of the judgments recovered by these parties, show that the notice directed by the law was not given by the sheriff. On the contrary, the sheriff returned that the " advertising was waived by consent of plaintiff's and defendant's attorneys." Under such circumstances, to give the judgments the effect claimed for them by the counsel of Messrs. Denmead, would seem to be impossible.

I am, therefore, of opinion, that the question between them and the mortgagees must depend upon the answer which may be given to the principal question in the cause, and that is, whether the machinery which they supplied is a fixture or not ?

Poole and Ferguson, whose claim is marked No. 10, rest their right exclusively upon the lien law. It appears from the proceedings, that they made certain repairs to the machinery in the Powhatan Factory and supplied and put up in the new factory certain cast iron pipes, for which they claim a lien, as "machinists and iron-founders, for work and materials, to wit: iron-castings, wrought iron in bands, and pipes, and bolts, and lumber." The right of these parties to be paid out of the proceeds of the sales in this case depends likewise upon whether the machinery repaired and made by them is to be regarded as part of the freehold, or retains its character of personal estate. If in legal contemplation they are fixtures they are operated upon by the mortgages, and enure to the benefit of the mortgagees.

The claim of Thomas P. Williams, and Spence and Reid, No. 11, is founded on a mortgage executed to them by William Mason and wife, and William Mason and Son, bearing date the

2d of April, 1849. The object of this deed was to secure advances to be made by the mortgagees from time to time to the firm of Mason and Son, not exceeding at any one time thirty thousand dollars, and it embraces the entire property, real and personal, sold under the decree in the cause, and by its terms is subject to prior incumbrances.

Ineffectual attempts having been made by the trustees appointed by the decree of this Court to make sale of the property as an entirety, an order was passed authorizing a sale in separate parcels, which was accomplished, the parties respectively furnishing the machinery becoming purchasers thereof. These sales have been ratified, but in the order of ratification all questions affecting the distribution of the proceeds were reserved, so that the rights of the several parties to the proceeds are now for the first time presented for consideration.

It has been urged, that the relaxation of the rule in regard to fixtures and the indulgence which has been shown by the Courts in its application, when the question arose as between landlord and tenant, and especially when it affected fixtures erected for the purposes of trade, should prevail in this case, upon the ground that the elder Mason, the mortgagor, and his partners might and should be treated as the tenants of the mortgagee upon the authority of the case of the *George's Creek Coal and Iron Company* vs. *Detmold*, 1 *Maryland Rep.*, 225. But this case in my opinion by no means supports the proposition for which it is cited. In that case there was an affirmative covenant, that the mortgagor should continue possessed of the land, with the power to take the profits and issues, until default, and this covenant in the judgment of the Court amounted to a re-demise, there being a certain determinate time fixed, beyond which the right of possession should not continue. But in this case no such covenant is to be found, and hence, according to the express language of the Court of Appeals, in laying down the rule which they say is to be extracted from the cases, the ground upon which the re-demise will be inferred does not exist. Their language is, "that no such re-demise will be inferred from a covenant that

the mortgagee should not sell or lease (even if construed a covenant not to enter) until after notice, since both the certainty as to the time, and the affirmative words of the right of enjoyment are wanting, which are essential to create a term for years."

I apprehend, therefore, that the rule as to fixtures, which applies as between mortgagor and mortgagee, must govern in this case. There can be no doubt, I think, that the ancient rigor of the rule has been somewhat mitigated in modern times, and that the tendency and spirit of recent decisions, both in this country and in England, is to a still greater relaxation. It is most manifest, that the Supreme Court of the United States, in the case of *Van Ness* vs. *Pacard*, 2 *Peters*, 137, was by no means disposed to recognise the distinction drawn by Lord Ellenborough, in *Elwes* vs. *Maw*, 3 *East*, 83, between annexations to the freehold for the purposes of trade or manufacture, and those made for the purposes of agriculture, and I strongly incline to think, that whenever the question is directly presented to that Court for adjudication the distinction will be disregarded. That it was not viewed with favor by Mr. Chancellor Kent may be fairly inferred from the remarks made by him on pages 346 and 347 of the 2d volume of his Commentaries. Whilst, however, I think there exists a disposition to soften the rule, not only as between landlord and tenant, but as between parties standing towards each other in relations in which it has hitherto been applied with more strictness, I certainly do not feel myself at liberty to apply it with a moderation not sustained by the adjudicated cases.

If the law upon the subject is still too stringent to comport with the policy of the country and the spirit of the age, it is far better it should be modified by the legislature, as was done in New York, as between heir and executor or administrator, 2 *Revised Statutes*, 24, *sec.* 6, than that the Courts should undertake it, influenced by what they may believe to be required by the exigencies of the times in which we live.

Entertaining these views, I shall proceed as briefly as possible to dispose of the remaining questions in the cause.

The machinery, the proceeds of the sale of which give rise to the present controversy, consists in part of the steam-engine and boilers, constituting the motive power of the factory, and the machinery by which the cotton was manufactured, and which is described in the mortgage given to the Savage Manufacturing Company.

So far as that portion of the machinery is concerned which supplied the motive power and which was affixed to and placed in the building, in the manner described by the witnesses, it seems upon authority to be too clear for dispute, that it must be regarded as a part of the freehold, and as falling within the operation of the mortgages to the Bank and Wilson.

The counsel for the Messrs. Denmead pressed upon the Court the circumstance that this machinery was placed in the building after the execution of the mortgages, but so far as I am informed by the authorities this makes no difference. *Winslow* vs. *The Merchants' Ins. Co.*, 4 *Metcalf*, 306, is a direct decision upon the point, and I have been furnished with no case to the contrary, though numerous cases establishing the same principle have been produced and could be cited if necessary.

The authorities which prove that machinery of this description, affixed to a building for manufacturing purposes, becomes a part of the freehold, and as between mortgagor and mortgagee belongs to the latter as part of his security, are numerous and conclusive. The case cited is a strong one upon the question, and there are none so far as I am aware at variance with it, and it is fully supported by the cases of *Powell* vs. *The Mouson and Brimfield Manf. Co.*, 3 *Mason*, 459; *Farrar* vs. *Stackpole*, 6 *Greenlf.*, 154, and *Voorhis* vs. *Freeman*, 2 *Watts and Serg.*, 116.

It has been contended, however, that as by the terms of the mortgage to the Bank the machinery in the mill or factory then in existence passed, and as the Powhatan factory and the machinery in it was subsequently erected and put up, the latter ought not to be included in the mortgage, as not being within the contemplation of the parties at the time of its execution. The argument is, that the parties by their con-

tract have made a law for themselves, and that is, that the machinery and fixtures in the Powhatan factory shall constitute a portion of the security of the mortgage, but that machinery, though from its nature and the mode of its annexation a fixture, and as such a part of the realty, does not pass by the mortgage where it appears to have been made and affixed subsequently to its execution.

The mortgage in this case certainly contains no stipulation that improvements or additions to the premises, which are in their nature fixtures shall not pass and be bound as a part of the realty, and therefore the question is, what will be a reasonable and legal construction of its provisions? If the security of the mortgagee is limited to the extent to which the argument would conduct us, it might, perhaps, be insisted, that the new mill itself constituted no part of the security, but this, of course, has not been pretended. In the absence, then, of an express stipulation, one way or the other, the inquiry is as to the nature of the improvement. Has it become a part of the realty or not? If it has, it is to be considered as done by way of permanent improvement for the general benefit of the estate, and not for its temporary enjoyment, *Hunt* vs. *Hunt*, 14 *Pick.*, 386. This is the rule, says Chief Justice Shaw, in 4 *Metcalf*, 312, "in regard to articles *doubtful* in their nature," but as to additions which are not in their nature equivocal, the deed must of course include them. "If," say the Court, "such improvements consist in actual fixtures not doubtful in their nature, they go, of course, to the benefit and security of the mortgagee by increasing the value of the pledge. The expectation of such improvement and such increased value often enters into the consideration of parties in estimating the value of the property to be bound, and its sufficiency as security for the money advanced." And it may, I think, be very reasonably supposed, that the mortgagees in this case had an eye to such improvements and increased value of the identical nature and character which have been made upon the property mortgaged. The amount stated to be due from the mortgagor at the date of the mortgage was fifty-one

thousand dollars, and it provides not only for a continuance of this debt, but that it may be augmented to eighty thousand dollars. In view of this stipulation, and looking to the fact that the mortgagor was a manufacturing company, it may, I think, be fairly inferred, that it was in the contemplation of the parties to add to the value of the pledge by improvements in buildings and such machinery as might from time to time be required to carry on the business. So far as such improvements become, *de facto*, part of the realty, and are not in their nature equivocal, the law upon the subject seems to be free from doubt. They are to be regarded as included in the deed, and go, of course, to the benefit and security of the mortgagee by increasing the value of the pledge.

But it is again urged by the counsel for the Denmeads, that they do not claim under the mortgagors, but in opposition to them. That the mortgagors did not own this machinery, but took it subject to their claim, and, therefore, it is supposed this case is distinguishable from the numerous cases which have been cited by the counsel for the Bank.

If, however, I am right in thinking that this particular machinery became a part of the realty, by being placed upon and affixed to it, it became subject to the mortgage, and bound for the debt secured by it, to the same extent in all respects as the building which contained it, and the mortgage being the prior incumbrance the lien of the mechanic must be in subordination to it.

It is, therefore, my opinion, that with respect to that portion of the proceeds of these sales which arose from the motive power furnished by the Messrs. Denmead, they must be postponed to the claims of the mortgagees, the machinery constituting the power being regarded by me as affixed to and a part of the realty.

But upon a very careful examination of the evidence and the authorities relating to the subject, I do not think the machinery furnished by the Savage Manufacturing Company has lost its character of personalty by the mode in which it has been put into the building.

It is undoubtedly true, that according to the reasoning of some of the cases, a portion of this machinery might be regarded as fixtures, and consequently as becoming part of the realty, but no case has been produced, and it is thought none can be found, in which machinery used for carrying on the kind of manufacture which was carried on in this mill, has been *adjudged* to be real estate, although in several of them the mode of putting it up and securing its uniform and steady operation, has been in every essential particular precisely like the present.

In the case of *Walker* vs. *Sherman*, 20 *Wendell*, 636, the question arose upon the report of commissioners in partition between tenants in common, and it was decided that machinery used in a woollen factory, which had passed with the estate from one owner to another for a series of years, was no part of the realty. The case was decided after an examination of many of the English and American authorities. It was treated on the same principle as if it had arisen between grantor and grantee, when the doctrine of fixtures making a part of the freehold and passing with it, is applied much more extensively than between some others.

There can be no doubt that the Judge by whom the opinion in *Walker* vs. *Sherman* was pronounced, was disposed rather to relax the principle to be gathered from some of the preceding cases, than to render it more stringent. He was evidently indisposed to carry the principle of constructive fixtures as far as it had gone in the cases he was commenting on, and although it may be inferred from some expressions to be found in his opinion, that mere physical annexation, though slight, and causing by the separation but little injury to the freehold, would give to the thing so annexed the character of a fixture, I am persuaded that, looking to the whole opinion, he did not so intend to be understood. On page 639, he complains of the severity of the law, and says, that to constitute a fixture, the machinery "must not only be essential to the business of the erection, but it must be attached to it in some way; at least it must be mechanically fitted, so as in ordinary

understanding to make a part of *the building itself.*" I am strongly inclined to think that, whatever stress may be laid upon some of the expressions contained in this very elaborate opinion of Judge Cowen, the principle which runs through it, and fairly to be deduced from it, is against regarding such machinery as that made by the Savage Manufacturing Company, and put up and secured as described by the witnesses, as forming a part of the building itself.

The case of *Vanderpool* vs. *Van Allen*, 10 *Barbour*, 157, cannot easily be distinguished in principle from the cases now under consideration. The property claimed to be fixtures, and as such to have become a part of the real estate mortgaged for the benefit of the mortgagee, consisted of the same description of machinery, and was attached to the building very much as in this case, yet it was held that it did not come within the denomination of fixtures, nor lose its character of personal estate, and this conclusion was stated by the Judge who delivered the opinion, to be quite consistent with the case of *Walker* vs. *Sherman.*

The opinion of Mr. Justice Brown, in 10 *Barbour*, 163, 164, contains several passages strikingly applicable to the present case, and, as I think, exhibits with great propriety and clearness the distinction between that kind of machinery which, from its weight and adaptation to the place where it is fitted and used, must be regarded as a part of the realty to which it is attached, and those lighter and more portable articles, which are capable of removal and use elsewhere, without injury to themselves or the building in which they stand.

In this case of *Vanderpool* vs. *Van Allen,* the authorities, or many of them, are again brought into review, and I am persuaded it will be found, upon an examination of them, that the old and rigid rule, that any annexation whatever to the freehold, however slight, will make the thing annexed a part of it, is not the law of the present day, and in view of the circumstances of the age in which we live, and the importance of encouraging and protecting the rights of him who employs his time and tasks his ingenuity in inventing new methods for

facilitating the operations of human labor, I may, perhaps be permitted to express my satisfaction that it is not.

In the case of *Holmes* vs. *Tremper*, 20 *Johns.*, 29, in which it was decided that a tenant might remove a cider-mill and press erected by her for her own use, Chief Justice Spencer, in pronouncing the judgment of the Court, said, " the rule anciently was very rigid, but I think it has yielded materially to the more just and liberal notions of modern times," and this case is referred to by Chancellor Kent, as containing a just and enlarged view of the subject. 2 *Kent's Com.*, 347.

It has already been said that no case has been produced by counsel, or found in my own researches, in which machinery placed in a mill for the manufacture of cotton, has been held to pass with the freehold as a part of it, as between vendor and vendee and mortgagor and mortgagee, whilst the cases establishing the contrary are numerous. In *Swift* vs. *Thompson*, 9 *Conn.*, 63, machinery in a cotton mill, attached to the building so far as to keep the machinery steady, and which could be removed without injury to the building or the machinery, was held to be personal property, as respects creditors and purchasers ; and *Gale* vs. *Ward*, 14 *Mass. Rep.*, 352, maintains the same doctrine.

Some of the cases say that to convert things of a personal nature into real estate by annexation to the freehold, they must be fixed to it *perpetui usus causâ*, a phrase borrowed from the civil law. But this, as I understand it, is the rule when the question arises between landlord and tenant, a relation which, according to the uniform doctrine of the cases essentially modifies and mitigates the law upon the subject. I apprehend that, as between mortgagor and mortgagee, if the annexation be such as to make it impossible to dismantle the personal from the real estate without injury to both, and especially without injury to the latter, that the personal must be considered as converted into real estate, though it was not affixed *perpetui usus causâ*.

The case of *Trappes* vs. *Harter*, 2 *Crompton & Meeson*, 152, has been the subject of a great deal of comment on both

sides. If the doctrine of that case be law, as understood by the counsel for the manufacturing company, it would be conclusive of the question as between the Company and the Bank, and hence the counsel of the Bank, seeming to feel the pressure of the case against him, has made a strong effort to shake its authority.

In many of its features it is like the case now before this Court, and, unquestionably, if the decision of Lord Lyndhurst is a true exposition of the law, the question between these parties must be considered as settled. It will be observed, upon reading his decision, that his Lordship placed his judgment upon the double ground that the machinery, being capable of removal without injury to itself and the building, and erected in a neighborhood where machinery of that kind is commonly removed, was not to be regarded as belonging to the inheritance, and that, under the circumstances of the case, as detailed in the opinion, it was not intended to be included in the property mortgaged.

The reporters of the case of *Trappes* vs. *Harter*, referring to the cases of *Boydell* vs. *M'Michael*, 1 *Crompton, Meeson & Roscoe*, 177, and *Hallen* vs. *Runder*, *ib.*, 266, suppose the authority of *Trappes* vs. *Harter* to be shaken, or at all events, that it must be regarded as having been decided on its own peculiar circumstances. But, upon examining these cases, I think it will be found that they do not impair the authority of Lord Lyndhurst's opinion in *Trappes* vs. *Harter*. The articles in *Boydell* vs. *M'Michael*, were unquestionably fixtures, and in a controversy between the mortgagees of the tenant, to whom the term and all the fixtures were expressly assigned, as a security for money lent, and the assignees of the tenant, who afterwards became a bankrupt, it was held that the fixtures were not goods and chattels within the order and disposition of the bankrupt, and did not pass to his assignees.

There was no question in that case that the articles were part of the freehold during the term, though the tenant had a right to remove them at the end of the term, and as the tenant assigned the term and the fixtures to the mortgagee, the latter

not only took the house during the term, and everything that was affixed to the freehold, but likewise the tenant's right to remove the fixtures at the end of the term. The case throughout assumes an uncontroverted position, that the articles in question were parcel of the freehold during the term, the tenant, however, having the right, during its continuance or at its end, to remove them, and by the assignment to the mortgagee, the tenant's interest in the realty, and everything affixed thereto, together with the right of removal, passed. This is the opinion of Parker, B., and Alderson, B., the latter saying, " this question turns on the nature of the property; it is clear that nothing of a freehold nature is within the meaning of the clause in the bankrupt act as to order and disposition."

In the case of *Hallen* vs. *Runder*, the property in dispute likewise consisted of fixtures put up by a tenant, and nothing more is decided than that upon an agreement between landlord and tenant, that the latter would not remove them at the expiration of his tenancy, " the former agreeing to take them at a valuation ; the tenant, though he could not recover the price as for goods sold and delivered, might recover as for fixtures bargained and sold."

But the case which seems most strongly to support the judgment of the Court in *Trappes* vs. *Harter*, and to prove that the conclusion arrived at in that case, whatever may be said of a portion of the argument of the Chancellor, has not been weakened by the subsequent cases, is the case of *Hellawell* vs. *Eastwood*, 3 *Eng. Rep. in Law & Equity*, 562. The question in this last case was, whether cotton-spinning machines which were fixed by means of screws, some into the wooden floor, and some into lead which had been poured in a melted state into holes in the stone for the purpose of receiving the screws, were by law distrainable for the rent of the mill, in which they were fixed, and this depended entirely upon whether they were part of the freehold or not. If they were, they could not be distrained, for what is a part of the freehold cannot be severed from it without detriment to the thing itself in the removal, and besides, what is fixed to the freehold is part

of the thing demised. "The question," said Parke, Baron, "is whether the machine, when fixed, is parcel of the freehold, and this is a question of fact depending on the circumstances of each case, and principally on two considerations, *first*, the mode of annexation to the soil or fabric of the house, and the extent to which it is united to them; whether it can easily be removed, *integre, salve, et commode*, or not, without injury to itself or the fabric of the building; *secondly*, on the object and purpose of the annexation, whether it was for the permanent and substantial improvement of the dwelling, in the language of the civil law, *perpetui usus causâ*, or merely for a temporary purpose, or the more complete enjoyment and use of it as a chattel;" and the conclusion was that the machines had not become a part of the freehold; that they had not lost the character of movable chattels, and were liable to be distrained.

The law in relation to fixtures does not seem to have engaged the attention of the Courts in this state frequently. The only reported cases are those of *Kirwan* vs. *Latour*, 1 *H. & J.*, 289, and *Coombs and Jardan*, 3 *Bland*, 284. The latter does not seem to have decided any question bearing upon the present controversy; but the former, which was regarded by the General Court as a case between vendor and vendee, is an authority, to some extent at least, in favor of the Savage Manufacturing Company.

Assuming, therefore, the rule to be that as between mortgagor and mortgagee, the question is whether the thing claimed to be a fixture is so attached as to become parcel of the freehold, which is a question of fact depending on the mode of annexation to the soil or fabric of the house, and the extent to which it is united to them; that is, whether it can be removed or not without injury to itself or the fabric of the building, I am of opinion, upon the evidence in this case, that the machinery furnished by the Savage Manufacturing Company has not become a part of the freehold; that it has not lost the character of movable chattels, and consequently is not covered by, or within, the operation of the mortgages to the Bank and

Wilson. And in coming to this conclusion, it appears to me very reasonable to allow some weight to the parol proof which establishes the fact that the ownership of such machinery is frequently in one person, while the building in which it is placed is the property of another; and that according to the received opinion of persons who use and deal with such property they are regarded as entirely separate, and as preserving the distinctive characteristics of real and personal estate. It is not that I understand the proof as establishing a usage which would control or change the general law in the place where the usage prevails, but as a fact which may be considered in connection with the other proof bearing upon the question. Such proof was not without its influence in *Vanderpool* vs. *Van Allen*, before referred to.

The opinion which I have formed with respect to the machinery made by the Savage Manufacturing Company, does not at all conflict with *Ex parte Cotton*, 2 *Montague, Deacon & De Gex*, 725. That case merely decides that trade-fixtures put upon premises which had been previously mortgaged by one of the partners, though erected by the firm subsequently formed, belonged, upon the bankruptcy of the firm, to the mortgagee as a part of his security, and did not pass to the assignees of the partners. It seemed to be supposed that fixtures added by the firm after the mortgage would not be regarded as constituting a part of the mortgaged premises, though it was conceded that the fixtures which were upon the premises at the time of the mortgage passed by the deed to the mortgagee. The Court, while repudiating any such distinction, and asserting the right of the mortgagee to all the trade-fixtures, whether erected prior or subsequently to the execution of the mortgage, go on to say : " Of course this will not include any articles which are movable. What articles are fixtures and what movables, is often a troublesome question of fact; and if the parties differ upon it in this case, there must be a reference and an inquiry on the subject."

If the articles made by the Savage Manufacturing Company were fixtures, the case of *Ex parte Cotton* would apply as it does

apply to that portion of this machinery furnished by the Messrs. Denmead, which I think are fixtures; but in my opinion, the cotton machinery manufactured by the Savage Company retains its character of movable property, and consequently the mortagee cannot claim it.

I am, therefore, of opinion, that the Bank of Baltimore are entitled under their mortgage, as far as may be required for the payment of their debt, to the proceeds of the mortgaged premises; and that the machinery made and erected in this cotton-mill by Adam and William Denmead, except the looms, is to be regarded as part and parcel of the mortgaged premises, and subject as such to the payment of said debt.

After the satisfaction of the mortgage to the Bank, the residue of the proceeds of sale of the mortgaged premises, together with the proceeds of the ten acres not included in the mortgage to the Bank, but included in the mortgage to James Wilson, is to be applied to the payment of the claim due the latter.

The Savage Manufacturing Company is entitled to the proceeds of the machinery manufactured by and mortgaged to said Company on the 22d of February, 1848.

Poole and Fergusson, who claim for the repairs to the machinery in the Powhatan Factory, and for cast-iron pipes put in the Pocahontas Factory, cannot maintain their claim in opposition to the claims of the mortgagees; so far at least as the repairs are concerned. The lien for repairs must be postponed to the lien of the prior incumbrancers—the Bank and Wilson. The Court is not quite prepared at this time to say whether the cast-iron pipes, made and put by Poole and Fergusson in the Pocahontas Factory, picking-house, and repair-shop attached thereto, are or are not fixtures. If they are, they constitute a part of the property mortgaged to the Bank and Wilson in 1841 and 1845, and their proceeds must be applied accordingly. If they are not fixtures, then they are covered by the mortgage to Spence and Reed of the 2d of April, 1849, though their claim may be subject to the lien of the mechanic. In stating the account, the Auditor will present the question

in three aspects. In one account treating them as fixtures, and applicable to the payment of the prior mortgages; in the other as personal estate, and applicable to the satisfaction of the mortgage of Spence and Reed; and in a third account, as subject to the mechanics' lien : and these questions will be reserved for further consideration and order.

In regard to the question raised by one of the exceptions as to the apportionment of the rent received by the trustees, I am of opinion that it should not be credited to the several lien holders in proportion to the amount of their several claims. The proof shows the machinery is impaired in value by its use to a much greater extent than the buildings and real estate; and, therefore, in apportioning the rent there should be given to the holders of the lien on the machinery such proportion thereof, as according to the proof they would be entitled to, in view of the greater wear and tear to which the machinery is exposed.

The foregoing views are expressed as indicating the opinion of the Court upon the questions which have been argued, and an order would now be passed sending the cause to the Auditor to state accounts, in conformity therewith, but for the pendency of two petitions; one filed by William Mason and William Mason, Jr., on the 22d December last, and the other by Adam and William Denmead on the 31st of January last. The hearing of these petitions has been postponed by consent of counsel; and as it cannot now be known what effect they will have upon the rights of the parties to them, it would be premature to pass an order determining those rights.

An order having been filed by the Savage Manufacturing Company, dismissing their exceptions and petition as to the commissions of the trustees, and their counsel fees, an order will now be passed ratifying the report of the Auditor, except as to the disputed portions thereof.

[The petition of the Denmeads afterwards coming on for hearing, the Chancellor delivered the following opinion.]

THE CHANCELLOR :

All of the questions raised by the exception to the report of the Auditor in this case were considered, and the views of the Court expressed upon them in the opinion above; and the cause would have been referred to the Auditor to state an account accordingly, but for the interposition of two petitions, which were then depending, the hearing of which was postponed by consent of counsel. One of these petitions, that filed by William Mason, Sen., and William Mason, Jr., has been dismissed by the petitioners themselves, and is of course now out of the way; and upon that filed by Adam and William Denmead on the 31st of January last, counsel have been heard.

The nature of the claim of the Bank of Baltimore, and its title to be paid out of the proceeds of the sales made by the trustees under the decree in this case, has been fully considered, and need not now be examined. The Bank became the purchaser of the property mortgaged to secure its claim in the month of July, 1851, and subsequently, in November of the same year, sold the same to the Messrs. Mason for the price which it gave at the trustee's sale, to which was to be added the insurance and other charges paid by the Bank, amounting to little upwards of $1,400.

The Messrs. Mason have paid a part of this purchase-money, but a considerable portion remains unpaid, and the Bank retains the title to the property under the mortgage, and under the purchase made by it at the sale of the trustees as its only security. The nature of the contract between the Bank and the Messrs. Mason, and all that is material to know in relation to the transaction between them, will be found in the deposition of Mr. Jamieson examined by the petitioners, the Messrs. Denmead.

It is urged on the part of the petitioners, that under these circumstances it is not competent to the Messrs. Mason to hold the machinery, which has been decided to be a fixture, and to constitute a part of the mortgage security, as against the petitioners who made it and put it into the building; that,

however the case may be as between the petitioners and the Bank, the mortgagee, the question is a very different one between the petitioners and the Masons, for whom the machinery was made.

Assuming in this view that the machinery was a fixture, constituting a part of the freehold and covered by the mortgage to the Bank, it seems to me very clear that a purchaser from the Bank, whoever he may be, will stand clothed with the rights of the vendor, and that those rights, whatever they are, will not be affected by the nature of the dealings between this purchaser and a third party claiming in hostility to the Bank. The claim of the petitioners under the mechanics' lien law has been adjudged to be subordinate to the prior mortgage to the Bank, and when the Bank purchased at the trustee's sale it took the property wholly discharged from the lien of the petitioners, and a purchaser from it must take a title equally exempt from this lien.

If this be not so, the Bank may be deprived of the full benefit of its security. Having an unexceptionable title itself, it has a right to go into the market with that title and make the most of it, which it could not do if the person most likely to purchase must take the property subject to an incumbrance, which was of no avail against his vendor, 1 *Story's Eq.*, secs. 409, 410.

But in this case the title still remains in the Bank, and it is the only security which it holds for the unpaid portion of the purchase-money, and as against the Bank, unquestionably, if the former opinion of this Court is correct, the petitioners have no claim. Their petition must therefore be dismissed.

In discussing the question presented by the petition, the counsel for the petitioners not having heard the concluding argument made by the Bank's counsel at the former hearing, took occasion (and with entire propriety) to submit some remarks upon the subject of the lien claimed by his clients, under the mechanics' lien law.

There can be no doubt, that under the original Act of 1838, ch. 205, and its several supplements, the lien of the mechanic

for work and labor and for materials furnished must be in sub-
ordination to prior incumbrances.   Subject to such incum-
brances, the mechanic and materiel-men have liens on the
building, and on the ground covered by the building, by the
1st and 2d sections of the original Act.   The 4th section of
the Supplement passed in 1845, ch. 176, makes every machine
thereafter to be erected, constructed, or repaired in the city
of Baltimore subject to the lien, in like manner as buildings
are made subject under the provisions of the original Act and
the supplement.

It has been urged, that as the mechanic who erects or does
work on a building has a lien not only on the building, but
also on the ground occupied by the building, whilst the lien of
the machinist is confined to the machine, the Courts should in
the administration of the law incline to preserve the security
of the latter, by protecting the machine, from the operation of
the claims of other parties.

It will be found, however, upon reading the 4th section of
the Act referred to, that the lien is, in *like manner* as buildings
are, made subject under the provisions of the supplementary
and the original Act, and by both the lien of the mechanic, in
express terms is postponed to prior incumbrances.

If, therefore, the machinist puts up or repairs a machine,
which from the nature of its annexation to the building be-
comes a part of it, and the building itself is subject to a mort-
gage, the lien of the machinist must yield to the claim of the
mortgagee, and can only be asserted in subordination to it.
And as, by the former opinion of this Court, it was deemed
clear upon authority, that with respect to that part of the
machinery furnished by the Messrs. Denmead which consti-
tuted the motive power, it was to be regarded as so affixed to
the building as to be a part of it, the conclusion follows, that
the lien of the machinist must give way to that of the mort-
gagee, unless upon further consideration effect should be
given to the judgments obtained by the Messrs. Denmead in
1849, beyond what it was supposed they were entitled to upon
the former argument.

It was then thought, that these judgments could not be permitted to impair the rights of third parties, because of the omission of the sheriff, by the consent of the plaintiffs, to give the public the notice directed by the Act of 1838, ch. 205, which notice by the 9th section of the supplementary Act of 1845, ch. 287, is required to furnish precise and full information of the amount of the claim, and other particulars interesting to all persons who may be concerned.

It is insisted, that as Baltimore County Court had jurisdiction to render these judgments, and the omission to give the notice was a mere irregularity, which (though perhaps ground of reversal on appeal) no Court in a collateral proceeding can for that reason refuse to give them full effect.

The question, however, is not whether the judgment shall have effect against the parties who were notified of the proceeding, but, whether they shall conclude persons who had no notice either actual or constructive, and who consequently have had no opportunity of defending their rights. It appears to me quite plain, that the legislature never, intended in passing these laws, to affect the interests of parties who had no notice, actual or constructive, of the proceedings under them; and I am by no means prepared to say, that if the person claiming the lien chooses to limit his remedy to the defendant and the person in possession of the building, that he may not do so.

Surely it would be everywhere and with one voice denounced as violative of the plainest principles of justice, that the rights of parties should be concluded by a judgment, when they were not only not summoned to resist it, but where a studious effort appears to have been made to keep them in ignorance of the proceedings which led to it. I do not, of course, mean to be understood as intimating that such design existed in this case, but simply as indicating the manifest injustice of holding the Bank to be affected by a judgment of which, upon the face of the record, they had not and were not intended to have notice.

I hold, therefore, that in denying to these judgments the full effect attributed to them, I am not impairing their efficacy

to any extent, as designed by the tribunal by whom they were rendered. I am simply saying that they cannot be allowed to conclude the rights of strangers to them.

The proceedings under the lien law, though in the nature of proceedings *in rem*, are not purely of that character. The suit is *inter partes*, and must be confined to such parties. The 16th section of the original Act, says the " *scire facias* shall be served as a summons upon the defendant therein named, and a copy left with the person residing in the building, if occupied as a residence," &c. If, therefore, the notice by advertisement in the newspapers is not given, as directed by the 17th section, the judgment must be limited in its operation to the parties warned according to the preceding section.

But, viewing the proceedings as strictly *in rem*, or only partaking to some extent of the nature of such proceedings, still it appears to me to be plain that actual or constructive notice must be given, and is essential to the validity of the judgment, that is, essential to its validity against all the world. In the case of *Woodruff* vs. *Taylor*, 20 *Vermont Rep.*, 65, the subject was very fully discussed by the Court, after a second argument by eminent counsel, and after speaking of the difference between proceedings purely *in rem*, and those which to some extent may be so regarded, though in form *inter partes*, the Court says, " It is just as essential to the validity of a judgment *in rem*, that *constructive* notice at least should appear to have been given, as that actual notice should appear upon the record of a judgment *in personam*. A proceeding professing to determine the right of property, where no notice, actual or constructive, is given, whatever else it might be called, would not be entitled to be dignified with the name of a judicial proceeding. It would be a mere arbitrary edict, not to be regarded anywhere as the judgment of a court." And the same principle is maintained in the case of *Bradstreet* vs. *Neptune Ins. Co.*, 3 *Sumner*, 607.

The Messrs. Denmead, then, in this case, by the form of the proceeding adopted by them to enforce their lien, have limited the operation of their judgments to the parties warned

according to the 16th section of the Act of Assembly. It is not for this Court in this collateral way to deprive them of the benefit of their judgments, so far as the parties are concerned who did appear, or were warned to appear in the County Court to assert their rights in opposition to them. But when, having themselves excused the sheriff from giving the public notice by advertisement in the newspapers, as directed by the 17th section of the law, they seek, nevertheless, to occlude all parties, they seek to do that which must strike every mind as manifestly and flagrantly unjust. So far as relates to parties who have no notice, actual or constructive, the judgment, in the language of the authority quoted, is "an arbitrary edict, not to be regarded anywhere as the judgment of a Court."

It has been urged by the counsel for the Messrs. Denmead, that the proper remedy would be by appeal to the Court of Appeals ; but, according to my view of the matter, it is extremely doubtful whether an appeal in this case would lie at the instance of the Bank, as I apprehend none but parties to the judgment or decree appealed from have the right of appeal, and it is very certain that under the provisions of the Act of 1836, ch. 200, the execution of such judgment or decree cannot be stayed or delayed, unless the person or persons against whom it was rendered or passed, &c., shall give bond.

But surely it cannot, with any propriety, be said that these judgments were rendered against the Bank of Baltimore, or regarding the proceeding *in rem*, or *quasi in rem*, that they were adjudications affecting the Bank's title to the property, when it had no notice, either actual or constructive, and hence I infer that should the Bank appeal, it would be told in the Appellate Court, you are no party in any way to this proceeding, nor are your rights involved in it, and therefore you have no title to bring the record for review before the Court.

I am, therefore, relieved from the necessity of considering whether the principle settled by the Court of Appeals in *Shivers* vs. *Wilson*, 5 *H. & J.*, 130, is applicable to this case. The conclusion to which I have come is, that the judgments, though

good *inter partes*, has no operation against strangers, and that the Bank of Baltimore is a stranger.

———

COLLINS and ALEXANDER, for Complainants.

GEORGE H. WILLIAMS, for Savage Manufacturing Company.

J. MASON CAMPBELL, for the Denmeads.

J. MEREDITH, for the Bank.

TEACKLE, for other Claimants.