KIMBALL-TYLER COMPANY ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTI- MORE ET AL.

(Two Appeals in One Record)

[Nos. 18-19, September Term, 1957 (Adv.).]

*Decided June 24, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*William B. Rafferty, Henry M. Decker, Jr.,* and *J. Cookman Boyd, Jr.,* with whom were *Clarence W. Miles, Enos S. Stockbridge, Francis A. Michel* and *Allan Sauerwein* on the brief, for the appellants in the first case.

*Herbert M. Brune,* with whom were *Goldberg, Weigle, Mallin & Rivkin* on the brief, for the National Can Corporation.

*Hyman A. Pressman* for the appellants in the second case.

Submitted on brief by *Edgar A. Poe, Jr., Francis A. Michel* and *Bartlett, Poe & Claggett* for the Armco Steel Corporation.

*Hugo A. Ricciuti, Deputy City Solicitor of Baltimore,* and *Alexander Harvey, II, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Thomas N. Biddison, City Solicitor,* and *W. Thomas Gisriel, F. Clifford Hane* and *William H. Marshall, Assistant City Solicitors,* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This case involves two appeals in one record, from identical decrees of the Circuit Court of Baltimore City, upholding the validity of the Baltimore City Ordinance, No. 643, which repealed the manufacturers' tax exemption, and dismissing bills of complaint seeking permanent injunctions against the enforcement of the ordinance.

The appellants include various corporations and a partnership engaged in the business of manufacturing in Baltimore City, and a taxpayer of Baltimore City. Some of the corporations are located in that portion of the City annexed by Chapter 82 of the Acts of 1918, and others are located in the older part of the City. The suits were brought against the Mayor and City Council of Baltimore, various other officials of the City, and the State Tax Commission of Maryland. The appeals were advanced for argument in this Court.

Ordinance No. 643, effective December 5, 1956, repealed the exemption from taxation which, prior to its passage, had applied to machinery and inventory of manufacturers in Baltimore City. Following its passage, the City Council passed, on December 18, 1956, and the Mayor approved before the end of the year, Ordinance No. 667, which established the

tax rate in Baltimore City for 1957 at $2.88. Had Ordinance No. 643 not been passed, it was estimated that some $400,000,000 would have been excluded from the estimated value of all the property in the City subject to taxation, and the tax rate for 1957 would have been $3.34.

The cases were consolidated for trial in the equity court below and evidence was introduced by way of a consolidated stipulation, together with attached exhibits. Taken as a whole, the evidence related to the administrative practices of the State Tax Commission and Department of Assessments of Baltimore City, opinions and data bearing on the probable economic or business effects of the exemption and its repeal, estimated effects upon State revenue, and similar matters. Since the decisive questions presented on these appeals are questions of law, we shall not attempt to detail or even summarize the evidence, although we may refer to particular parts in the discussion of the legal principles involved.

The first question presented is whether the General Assembly, and the City acting pursuant to authority granted, possessed the power to repeal the tax exemption. This involves a consideration and construction of the various applicable statutes and ordinances. The history of the exemption begins with Chapter 187 of the Acts of 1880 (or Chapter 235 which seems to be identical), a local enabling act which permitted the City to exempt manufacturers' machinery and equipment "whenever it shall seem expedient for the encouragement of the growth and development of manufactures and manufacturing industry in said city". This was implemented by the City in 1881, by the passage of Ordinance No. 7. The enabling act (broadened by Chapter 32 of the Acts of 1912 to include manufacturing inventories), was re-enacted from time to time by the General Assembly and is now included in Section 6 (33) of the City Charter. By Chapter 342 of the Acts of 1882, the General Assembly passed a public general law granting a similar exemption on machinery used in manufacturing in Baltimore City and in each county that by local action evidenced the desire to have the law made effective therein. Virtually the same exemption was authorized in Chapter 528, Acts of 1914, the year in which tangible personal

property of business corporations was made taxable and the share tax on such corporations was abolished by Chapter 324, Acts of 1914. At first the exemption on machinery was from local taxes only, but this was broadened to include State taxes by Chapter 226, Acts of 1929.

In 1918 the General Assembly passed the Annexation Act, Chapter 82, Acts of 1918, whereby certain portions of Anne Arundel County and Baltimore County were annexed to the City of Baltimore. Section 10 of this Act provided: "* * * that all personal property, of every description, owned by any person, firm or corporation and used entirely or chiefly in connection with manufacturing, in the territory annexed by this act to Baltimore City, including mechanical tools, or implements, whether worked by hand or steam or other motive power, machinery, manufacturing apparatus or engines, raw material on hand, manufactured products in the hands of the manufacturer, bills receivable and business credits of every kind, due to the manufacturer, for goods manufactured in Baltimore City shall be exempt from taxation for all ordinary municipal purposes." It may be noted that this called for no concurrence by the City, but Section 15 of the Annexation Act provided that in the territory annexed the Mayor and City Council should possess the same power to pass ordinances, under powers granted by the Charter, as in the "old city". In the following year, by Ordinance No. 462, approved March 6, 1919, the City for the first time broadened the scope of the exemption to include inventories, although it had possessed the power to do so in the "old city" since 1912. The last ordinance passed by the City, giving effect to the exemptions authorized, was apparently Ordinance No. 1503, approved December 20, 1950, and incorporated in the City Code (1950 ed.) as Article 37, sec. 50.

The present provisions of the Public General Laws, relative to manufacturers' exemptions, are found in Code (1951), Art. 81, sec. 8 (23) and (24), which provide in part: "The following shall be exempt from assessment and from State, county and city taxation in this State * * * : (23) Tools * * * machinery, * * * used in manufacturing, * * * in any county or city, as herein defined, (including the City

of Baltimore) * * * in which by law, resolution or ordinance the same are or may be exempt from county or city taxation; and the County Commissioners of any county and any city, as herein defined, including the Mayor and City Council of Baltimore, are hereby authorized to pass such resolution or ordinance. * * *. (24) Raw materials on hand and manufactured products in the hands of the manufacturer in any city and/or county in which by law, resolution or ordinance the same are or may be exempt from county and/or city taxation; provided that nothing in this subsection shall exempt any such property from State taxation or from assessment therefor. * * * ." (All of this language is repeated in the 1956 Supplement with special provisions, added as to particular counties, not here pertinent.)

As a result of a pressing need for additional revenues for the City of Baltimore, the General Assembly passed Chapter 1 of the Laws of 1945 (Extraordinary Session), which added subsection 30A to Section 6 of the 1938 City Charter. This law expressly granted to the City of Baltimore the power to tax to the same extent as the State. The period of this taxing power was to continue for only two years. By Chapter 1, Acts of 1947 (Extraordinary Session), the City was given the power, in addition to its other taxing powers, to tax to the same extent as the State has or could exercise said powers within the limits of Baltimore City, with certain exceptions; to provide by ordinance for the imposition, assessment, levy and collection of any tax or taxes so authorized; "and from time to time to grant exemptions and to modify or repeal existing or future exemptions". In the title to the Act its purpose was described as to confer "the power to tax, * * * and the power to exempt and to modify and repeal existing or future exemptions, all to the same extent as the State has or could exercise said powers within the limits of said City". The Act contained a repealer of "all other laws, or parts of laws, inconsistent with the provisions of this Act, * * * to the extent of such inconsistency." However, the powers then granted were limited to the years 1948 to 1951. Chapter 27, Acts of 1951, added subsection 33½ to Section 6 of the 1949 Charter, re-enacting the earlier act with the same title, in

identical language, but removing the time limitation. It may be noted that this Act specifically enumerated certain sources of revenue over which the Mayor and City Council could not exercise the power to tax, with the obvious purpose of protecting State revenues. (A minor amendment contained in Chapter 768, Acts of 1953, is conceded to be irrelevant here.) Purporting to act pursuant to the Act of 1951, the City passed the repealing ordinance here challenged.

The appellants contend that the General Assembly could not lawfully delegate to the municipality its power to exempt from taxation. It is argued that under the Home Rule Amendment, Article 11A of the Maryland Constitution, ratified in 1915, the Charter adopted became "the law of said City * * * subject only to the Constitution and Public General Laws of this State". Section 6 of the Charter recognizes these limitations. The City's power to amend or repeal laws is confined to public local laws, and it is forbidden to repeal or amend public general laws or public special laws. Subsection 33, Section 6 of the Charter specifically states that "no authority is given by this subsection (33) to impose taxes on any property which is now or may hereafter be exempted from taxation by any general or special Act of the General Assembly of Maryland".

The appellants' argument is based on the assumption that the manufacturers' exemption is, in substance and effect, a creation of the General Assembly and a public general law. But it is clear that, throughout the legislative history, except in the case of the Annexation Act, the General Assembly has allowed the choice to rest with the local governing body as to whether or not, and under what conditions, the exemption should come into existence. Thus, in *Tar Products Corp. v. Tax Comm.*, 176 Md. 290, 295, it was held that the Tax Revision Act of 1929 was not self-executing, and that reasonable conditions might be imposed by ordinance upon claimants seeking the benefit of the exemption. It is true that in *Carroll County v. Shriver Co.*, 146 Md. 412, 419, it was held that although Chapter 528, Acts of 1914, gave the County Commissioners the authority to determine whether the law should apply to Carroll County, it did not delegate to them the

power to rescind the action taken and thus repeal the statute. But the power there found lacking is supplied in the instant case by the express language of subsection 33½, Section 6 of the City Charter. Insofar as the Legislature granted the express power to repeal exemptions theretofore granted, it would seem to have removed, *pro tanto,* any limitations on the powers theretofore granted, express or implied. It should be noted that under Section 2, Article 11A of the Maryland Constitution, the City has no authority at all to legislate on the subject of its express powers, contained in Section 6 of the Charter. Only the General Assembly can alter those provisions, and it has done so. Cf. *Castle Farms, etc. v. Lex. Mkt. Auth.,* 193 Md. 472, 485.

Whether the City would have the power to repeal other exemption provisions in Code (1951), Art. 81, sec. 8, which do not depend upon local action, we need not now consider. Subsections (23) and (24) of sec. 8 are unique in this respect. Nor need we consider whether the power to exempt in the first instance was derived from subsection 33, Section 6 of the Charter, which had its genesis in the Public Local Law of 1880, or from subsections (23) and (24) of sec. 8 of Art. 81. Until the passage of Chapter 27, Acts of 1951, which was clearly a local act enlarging the express powers of the City, it may be that the General Assembly retained the sole power to exempt property, upon the theory advanced in *Church Home v. Baltimore,* 178 Md. 326, 333, and *Jones v. Broening, Mayor,* 135 Md. 237, 240. But we clearly recognize in *Herman v. M. & C. C. of Baltimore,* 189 Md. 191, 196, in a case involving Chapter 1 of the Acts of 1945 (Extraordinary Session), that where a public local law granting an express power is enacted by the Legislature, it is a question of construction as to whether a repeal of an inconsistent public general law was intended. It was there held that the rule of interpretation laid down in Code (1951), Art. 1, sec. 13, was applicable, rather than the rule set out in the Home Rule Amendment. We think this case controls the issue here. The case of *Heubeck v. City of Baltimore,* 205 Md. 203, is distinguishable. There eviction provisions of a rent control ordinance, enacted under the police power, were held

invalid, but at the time of its passage a statewide law controlled evictions, and no express power to deal with the subject matter had been granted to the City. The Court found no basis for a repeal by implication, although the *Herman* case was cited without disapproval. We conclude that the argument based on lack of legislative power to make the delegation in the instant case is without merit.

A modification of the same contention, applicable to some of the appellants, is based upon the contention that the Annexation Act is a public general law, not dependent upon concurrence by the City, and hence that the City cannot by ordinance repeal the provisions of Section 10 of that Act, above quoted. We are by no means convinced that Section 10 could fairly be described as general legislation. We may assume that, insofar as the Act shifted the boundaries of Baltimore City to include parts of two counties, it was by definition a public general law. But at the moment it became effective, Section 10 and Section 15 became applicable in the territory annexed by Baltimore City and not elsewhere. If those sections had been incorporated into a separate bill, their validity would have been beyond question. In any event, for the reasons stated above, even a public general law can be repealed or modified by the General Assembly, either directly or by a grant of power to the City under the Home Rule Amendment. The question is one of construction and intention, not of the legislative power of the General Assembly.

The appellants contend, however, that as a matter of construction the Act of 1951 did not confer upon the City the power to repeal the manufacturers' exemption. It is pointed out that no power to exempt was contained in the Act of 1945, enlarging the taxing powers of the City, and that the inclusion of a power to exempt in the Act of 1947 was limited to a three-year period, coextensive with the additional taxing powers conferred. It is argued that the Legislature must have had in mind only the desirability of permitting the City to make necessary or advisable exemptions in connection with the new taxes levied under the Act, and not to delegate a power to repeal exemptions already created in accordance

with a general legislative policy laid down in Art. 81, sec. 8 of the Code of Public General Laws. It is said that the new taxes levied had in fact contained various exemptions, whose validity was questioned, and that the only purpose was to validate exemptions of that character. It is also noted that subsection 33 was allowed to stand intact and distinct from the provisions added in a succeeding section.

The argument is not without force, but we think it cannot prevail. The language is sweeping and confers the power to tax to the same extent as the State and to modify or repeal existing or future exemptions. We do not feel at liberty to restrict the plain meaning of the words used. The mere fact that they are included in a subsection following Section 33 is not controlling. We must read both subsections together, and not separate them into watertight compartments. Moreover, in case of doubt, we may look to the title as bearing upon the legislative intent. Cf. *Eisler v. Eastern States Corp.,* 186 Md. 251, 256. In its final form the Act contained no time limit. The manufacturers' exemption was, for all practical purposes, a potential source of revenue as well as an existing exemption. We cannot read the words used as applicable only to new sources of revenue. Moreover, where the State wished to reserve existing tax sources to itself, the limitations were spelled out in the Act. Actually, the effect of the repeal will enlarge State revenues from the property tax, although evidence was produced to show that it would diminish the net revenue received by the State, because the taxes paid would be deductible from the State income tax. In any event, the whole history of the manufacturers' exemption indicates that the grant of exemptions had long been left to local determination, regardless of the collateral effect upon State revenue.

The appellants contend that the repeal by the City was a breach of good faith, and a violation of the contract clause, Article 1, Section 10 of the Constitution of the United States. If not restrained by the contract clause, the City's action is a matter of legislative policy with which the courts cannot interfere, at least where the question is fairly debateable and no question is raised under the Fourteenth Amendment or

Article 23 of the Maryland Declaration of Rights. It seems to be well settled that an exemption granted from motives of policy, which applies generally to those coming within its purview, is not a contract and not irrevocable. *2 Cooley, Taxation,* secs. 701, 704, 706. The mere fact that persons act in reliance upon an exemption is not enough to show a consideration, particularly where the exemption is contained in a general law applicable to all persons falling within the class, and not in a special act or corporate charter. Nor is the fact that economic benefits accrue to the municipality decisive, for an exemption from the common burden of taxation can only be justified where it is in the general public interest. The taxing power is never presumed to be surrendered. In the absence of a consideration expressed in the Act, or of anything in the Act from which one can be inferred, an exemption is a mere privilege or gratuity. *Appeal Tax Court v. G. L. of M.,* 50 Md. 421; *B., C. & A. Ry. Co. v. Wicomico County,* 103 Md. 277, 288. Cf. *Welch v. Cook,* 97 U. S. 541, and *Wisconsin & Michigan Ry. Co. v. Powers,* 191 U. S. 379. See also Note, 173 A. L. R. 15, 83. It is also significant that the Chancellor found nothing in the evidence to support the view that the exemption in the instant case was in fact a contract, or resulted from a bargaining process.

The appellants contend that in any event the Ordinance could not be given effect for the year 1957, because it was passed after the date of finality. They argue that since the property was not, and could not rightfully have been, upon the assessment books on October 1, 1956, the City had no power to place it there by subsequent and retrospective action. *Baltimore City v. Jenkins,* 96 Md. 192; *Hopkins v. Van Wyck,* 80 Md. 7. Cf. *Eck v. State Tax Comm. of Md.,* 204 Md. 245, 255. We think the argument is based on a false premise. It is true that the City Charter provides in Section 56 that "The valuation of the property subject to taxation by Baltimore City, as it shall appear upon the assessment records of the Department of Assessments on the first day of October in each and every year, shall be final and conclusive, and constitute the basis upon which taxes for the next ensuing

fiscal year shall be assessed and levied; * * *." But the City and the State Tax Commission contend that the section was modified, by legislative action, so far as tangible personal property is concerned, and that the date of finality for such property is January 1.

Code (1951), Art. 81, sec. 30 (c), as amended by Chapter 603, Acts of 1947, provides: "All state, county and/or city taxes required to be levied upon assessments made by the State Tax Commission, and all state, county, municipal and other local taxes on tangible personal property by whomsoever assessed, shall be levied for the calendar year and as of the first day of January of such year as the date of finality * * * ." By Chapter 731, Acts of 1949, an addition was made providing an exception in Baltimore County and Montgomery County, where "the date of finality for taxes on tangible personal property assessed * * * shall be the same as may now or hereafter be provided by law for real property."

The appellants argue that this section deals solely with the "levy" of taxes, and does not change the October 1 date of finality applicable to assessments in Baltimore City, or for the determination of what property is taxable. We think the argument is unsound for a number of reasons. There is, of course, a distinction between a levy and an assessment, as was recognized in the recent case of *Casey Dev. Corp. v. Mont. County*, 212 Md. 138, 146. Cf. *Joesting v. Baltimore City*, 97 Md. 589, 596. However, the words "date of finality" are defined in Code (1951), Art. 81, sec. 2 (20), to "mean the date as of which taxes are to be levied for the taxable year in question and upon which assessments become final for such year, subject only to correction as herein authorized." Thus, the January 1 date of finality, as defined, is applicable to the assessment as well as to the levy. This reading is confirmed by the fact that, in the 1949 amendment, the Legislature thought it necessary to except from the January 1 date of finality, "tangible personal property assessed" in two counties. It is also confirmed by the fact that the title of the Act of 1947 states the purpose of the enactment as "prescribing uniform date of finality for tangible personal property". Moreover, the Report of the Legislative Council to the

General Assembly of 1947 (p. 215), described the bill which became Chapter 603, as providing "that January 1 shall be the uniform date of finality for all assessments on tangible personal property". Here again, the question is one of construction, for the power of the legislature to repeal a public local law by the passage of a subsequent public general law is beyond question. Cf. *Hitchins v. City of Cumberland*, 208 Md. 134, and *State v. Falkenham*, 73 Md. 463.

The appellees also strongly rely upon administrative construction of the section. It is undisputed that the State Tax Commission, since 1929, has construed the section, insofar as it relates to the assessment of tangible personal property of corporations made by it, as fixing a January 1 date of finality, although the same language as to "levy" was used in the enactment of that year, Chapter 226, Art. 81, sec. 28 (c). The evidence shows that, since 1947, both the State Tax Commission and the Department of Assessments in Baltimore City have treated January 1 as the date of finality for the assessment of all tangible personal property in Baltimore City, as evidenced by forms and schedules produced. It is true that both before and since 1947, the Department of Assessments has sought to ascertain, about September 1, the probable aggregate amount of assessments which Baltimore City might anticipate, but we think this was only a matter of convenience, and the failure to make such an estimate of the value of exempt property prior to October 1 is not material. It is well settled that a contemporaneous construction, especially where there are subsequent re-enactments without change of the language thus construed, is entitled to great weight. *Comptroller v. Rockhill, Inc.*, 205 Md. 226, 233; *Dept. of Tide. Fisheries v. Sollers*, 201 Md. 603, 615; *Smith v. Higinbothom*, 187 Md. 115, 132. Since both the assessment and the levy in the instant case were made prior to January 1, and Ordinance No. 643 became effective prior to that date, we think the City's action was timely and effective for the calendar year 1957.

For the reasons stated we hold that the bills were properly dismissed by the Chancellor.

*Decrees affirmed, with costs.*