COMPTROLLER OF THE TREASURY *v.* KAISER
ALUMINUM & CHEMICAL CORPORATION

[No. 17, September Term, 1960.]

(Two Appeals In One Record)

*Decided November 9, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Edward F. Engelbert, Sales Tax Counsel, Retail Sales Tax
Division, Office of Comptroller,* and *Joseph S. Kaufman,
Assistant Attorney General,* with whom was *C. Ferdinand
Sybert, Attorney General,* on the brief, for appellant and
cross-appellee.

*Charles C. G. Evans,* with whom were *Piper & Marbury*
on the brief, for appellee and cross-appellant.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of court reversing a denial by
the Comptroller of a claim for refund of sales and use taxes
paid by the appellee. A cross-appeal challenges the disallow-

ance of interest upon the sum paid. The transaction subject to the taxes in question involved the transfer of title to certain heavy machinery and equipment in an aluminum extrusion plant from the United States to the appellee. The questions presented by the appeal are whether the sale was exempt as a casual or isolated sale; if not, whether the machinery and equipment were tangible personal property subject to the taxes in question; and whether the sale was exempt as not within the taxing power of the State.

In April, 1955, the appellee purchased for a lump sum a plant located at Halethorpe, Baltimore County, owned by the United States and held by the General Services Administration, successor to the War Assets Administration. The property consisted of land, factory buildings, machinery and equipment necessary to produce aluminum extrusions. The plant had been constructed and equipped by the United States, through the Defense Plant Corporation during World War II and operated by Revere Copper and Brass Company. After the war it remained vacant for several years and was leased in 1951 to the appellee until purchased by it pursuant to an option contained in the lease. The Comptroller made a deficiency assessment in 1956, which was promptly paid.

Code (1951), Art. 81, sec. 321 (sec. 325 of the 1957 Code) provides that "For the privilege of selling certain tangible personal property at retail as defined above * * *, a vendor shall collect from the purchaser a tax at the rate specified in this section on the price of each separate retail sale * * *. The tax imposed by this section shall be paid by the purchaser * * *." Code (1951), Art. 81, sec. 322(e) (sec. 326(e) of the 1957 Code) exempts from the sales tax "Casual and isolated sales by a vendor who is not regularly engaged in the business of selling tangible personal property." Code (1951), Art. 81, sec. 320(k) (sec. 324(k) of the 1957 Code) provides that " 'Engaging in business' means commencing, conducting, or continuing in business, as well as liquidating a business when the liquidator thereof holds himself out to the public as conducting such a business." Section 320(e) (sec. 324(e) of the 1957 Code) defines tangible personal property as meaning "corporeal personal property of any nature."

Rule 39 of the Comptroller's Rules and Regulations provides:

"The tax does not apply to casual and isolated sales made by a vendor who is not engaged in the business of selling tangible personal property. However, this exemption does not apply to sales made by those persons who hold themselves out as engaged in business, notwithstanding the fact that their sales may be few and infrequent.

"Any property which has been used in or connected with the business of the vendor is subject to the tax. Where a person sells his household furniture, he makes a casual or isolated sale, since the furniture was never used in or connected with his business.

"All sales made by officers of a court, pursuant to court orders, are casual and isolated sales, with the exception of sales made in connection with the liquidation or the conduct of a regular established place of business. Examples of such casual sales are those made by sheriffs in foreclosure proceedings and sale of confiscated property.

"Manufacturers, processors, refiners and miners in the business of producing and wholesalers engaged in distributing tangible personal property, who sell primarily other than at retail, are not deemed to be making casual or isolated sales, when they sell such tangible personal property to purchasers for use or consumption, notwithstanding that sales at retail may comprise a small fraction of their total sales.

"Sales of fixtures and equipment in conjunction with a complete liquidation of a person's business are considered casual and isolated sales.

"Sales by contractors of their equipment are not deemed to be casual or isolated sales and they must collect the tax thereon unless such sales take place in

conjunction with a complete liquidation of the contractors' [sic] entire business."

The Comptroller argues that the General Services Administration, successor to the War Assets Administration, is regularly engaged in the business of selling tangible personal property. He points to the facts, disclosed by the record, that hundreds of sales of surplus property, large and small, acquired by the United States for various purposes and no longer needed by the particular owning agency, have been made. During the period that the War Assets Administration maintained an office in Maryland, it collected and remitted the tax to the State. The appellee argues that the Government is in the position of a liquidator, who, by not holding himself out to the public as conducting a business, is entitled to the exemption. It seems clear that the Government never engaged in the business of manufacturing property, whether aluminum extrusions or otherwise. All that it did was to acquire plants, equipment and other real and personal property which in turn it leased to contractors and others, or used in the national defense. In this respect the instant case is distinguishable from *Comp. of Treas. v. Thompson Trailer Corp.*, 209 Md. 490. There we held that the sale was by one not regularly engaged in business within the meaning of the statute, and was a casual and isolated sale, since the seller was in liquidation and the sale was in conjunction with a complete liquidation of the only business of the vendor at the time of the sale. We also stressed the fact that on the record in that case the sale was never to be repeated, since the vendor was going out of business and winding up its operations. Cf. *Md. Glass Corp. v. Comptroller*, 217 Md. 241, 245.

A closer question in the instant case would seem to be whether, conceding that the Government was never in the aluminum extrusion business or any other manufacturing business, it nevertheless engaged in the business of selling surplus personal property. For present purposes we may assume that its activities could not fairly be described as doing "business", since it was not motivated by a desire for

profit. But the statute, as we read it, does not predicate the tax upon engaging in the business of selling, but rather upon the act of selling itself. Even in the case of sales outside the regular course of business, we think it is clear that the tax is collectible, unless it be shown that the particular transaction is casual and isolated. In the instant case it is clear that the sale in question is only one of a long series of operations to be continued into the indefinite future. The appellee would have us hold that because the sale in question was of a single, integrated plant, the transaction was casual and isolated. We cannot conceive that each in a series of unrelated transactions could fall in the exempt category, as being isolated and nonrecurring. The record shows that the disposition of surplus property of every description is a continuous operation by the government agency set up for that very purpose. See 58 Stat. 765 and 40 U. S. C. A. Ch. 10, § 471 et seq. The courts in several states have held that repeated sales of surplus property by business corporations are not casual or occasional. See *Trico Electric Cooperative v. State Tax Com'n,* 288 P. 2d 782 (Ariz.) and *Sutter Packing Co. v. State Board of Equalization,* 294 P. 2d 1083 (Cal. Dist. Ct. App.). Cf. *Northwestern Pac. R. Co. v. State Board of Equalization,* 133 P. 2d 400 (Cal.).

The appellee relies strongly upon the case of *Geneva Steel Co. v. State Tax Commission,* 209 P. 2d 208 (Utah), cited in the *Thompson Trailer* case, which involved a sale of a surplus steel plant by the Government. We think that case is distinguishable. The Utah Statute provided that "the term 'retail sale' is not intended to include isolated nor occasional sales by persons not regularly engaged in business," and a regulation of the State Tax Commission provided: "Under this rule no sale is taxable if it is not made in the regular course of a business of a person selling tangible personal property." The court relied strongly upon this regulation for the proposition that no sale, unless made in the regular course of business, was subject to the tax, and said at 213:

> "Assuming, without deciding, that the War Assets Administration makes retail sales as defined by our sales tax act when it sells surplus items of govern-

ment property such as motor vehicles, life rafts, sleeping bags, etc. to ultimate consumers, it is not making a 'retail sale' when it sells an integrated business to a new operator. The very nature and character of the two types of sales is radically different. The sale of a truck or a raft involves the simple exchange of an article of tangible personal property for a unit price. But the sale of an integrated business for a lump sum price is a complex transaction for it contemplates the exchange of real property as well as personal property, tangibles and intangibles, without regard as to what amount is being paid for real property, personal property, tangibles, or intangibles."

The ultimate thrust of the decision in that case seems to be not upon whether the sale was casual or isolated, but upon whether the statute purported to tax any sale of a mixed lot of real and personal property for a lump sum. In short, the gravamen of the decision seems to be that the legislature could not have intended to tax "complex" transactions, because of the difficulty of allocating a portion of the price to the tangible personal property. We do not agree with that reasoning.

In the instant case, we see no difficulty in making an allocation. Indeed, the appellee made an allocation upon its books. It is doubtless true that this allocation was for the purpose of enabling it to depreciate the machinery and equipment, as distinct from the land and buildings, at a more favorable rate, for income tax purposes. The Comptroller adopted and accepted the costs so allocated. We see no reason why the appellee should not be bound by the allocation on its books, even though not allocated in the purchase contract. The appellee does not contend that the allocation was erroneous, but takes the broad position that the machinery and equipment lost its character as tangible personal property and became real estate, not subject to the tax, when it was affixed thereto. We do not agree.

The record makes it clear that the machinery, though con-

sisting of heavy presses and compressors, mounted on concrete and anchored to the floor with bolts, can be removed without damage to the building itself and installed at another location without damage to the machinery. The appellee treated it as personal property for purposes of depreciation upon its books. The appellee cites a number of Maryland cases, of which *Dudley v. Hurst,* 67 Md. 44, is the leading case, on the subject of fixtures. The *Dudley* case involved a contest between the mortgagee of real estate upon which a canning factory was located, and a subsequent chattel mortgagee of the machinery. Recognizing that the most important question was that of intention, the court held the machinery was covered by the mortgage of the land. On the other hand, in *Anne Arundel Co. v. Am. Sugar Ref. Co.,* 99 Md. 481, which involved a question of property taxation, the court pointed out that the doctrine of fixtures has never been imported into the law of taxation. At common law, fixed and movable machinery were both regarded as personal property. The common-law rule was held applicable. We may also note that for purposes of the manufacturers' exemption from property taxation, machinery and equipment, whether affixed to the realty or not, have long been treated as tangible personal property. Cf. *Eastern Tar Products Corp. v. State Tax Comm.,* 176 Md. 290 and *Kimball-Tyler v. Balto. City,* 214 Md. 86. We have held that under the Sales Tax Statute, building materials, when incorporated into a building, lose their character as tangible personal property and are transformed into real estate. *Steiner Const. Co. v. Comptroller of Treas.* 209 Md. 453, 468. But we find nothing in the statute or the Comptroller's rule to show an intention so to treat machinery and equipment. That part of Rule 39 which states that "Sales of fixtures and equipment in conjunction with a complete liquidation of a person's business are considered casual and isolated sales" imports that sales of such property not in conjunction with complete liquidation are taxable. We have held that glass-making machinery, installed and serviced by the manufacturer and later purchased under an option, was subject to the use tax. *Md. Glass Corp. v. Comptroller, supra.* It was not suggested in that case that the doctrine of con-

structive annexation would apply. We recognize the difference between property taxes and excise taxes, but we see no justification for carving out a tax exemption in the instant case where the statute does not so provide.

There can be no question that the United States is a "person" within the definition of vendor contained in the Statute. We think the sale in question falls within the taxing power of the State. The tax is payable by the purchaser, and its incidence is not upon the Federal Government. It would seem that the mere liability to collect the tax would not impose an unconstitutional burden. *Colorado Bank v. Bedford,* 310 U. S. 41. In any event we think the present posture of the case does not present that issue. *Wilson v. Cook,* 327 U. S. 474. The only matter before us is whether or not the appellee is entitled to a refund of the tax paid by it. We hold it is not, and therefore the question of interest raised by the cross-appeal need not be considered.

> *Order reversed, with costs. The comptroller's denial of the claim is affirmed.*

BRUNE, C. J., filed the following dissenting opinion.

I regret to find myself in disagreement with the other members of the Court. I am, however, of the opinion that the sale here in question falls within the exemption provided for a "casual sale" under Code (1957), Art. 81, Sec. 326(e). The sale of personal property here involved was simply a part of a sale of an entire aluminum extrusion plant which the United States Government was disposing of after it had ceased to have further use for it as a war production facility. The Court's opinion points out that the Retail Sales Tax is imposed upon the act of selling and that the tax is imposed upon the purchaser. I agree; but I do not think that the language of Sec. 325 of Art. 81, upon which this view is based, controls the language of the exception contained in Sec. 326(e) which exempts "[c]asual and isolated sales by a vendor who is not regularly engaged in the business of selling tangible personal property."

There are, of course, two elements to the exemption: (1) the sale must be "casual and isolated;" and (2) the vendor must not be regularly engaged in the business of selling tangible personal property. The Court seems to concede that the second requirement is met when it says that "for present purposes we may assume that its [the Government's] activities [in selling surplus personal property] could not fairly be described as doing 'business', since it was not motivated by a desire for profit." The Court then proceeds to hold that the sale in question is not casual or isolated, because it is only "one of a long series of operations to be continued into the indefinite future" and supports this by stating that "the disposition of surplus property of every description is a continuous operation by the government agency set up for that very purpose." Whatever may be the situation as to sales of mittens, blankets, life jackets and innumerable other articles which are left over as surplus property after a war, it seems to me that it is straining reality to regard sales of personal property constituting integral parts of large war production facilities, such as this extrusion plant, as neither casual nor isolated, merely because, as a result of the vastness of this country's industrial war effort, it has a number of individual industrial plants to sell or because it has a number of such plants and many other things to liquidate. The Court's opinion seems to blend sales of mittens and of factories into a big, continuous operation; and despite the concession or assumption that the Government is not doing business in making such sales, it nevertheless seems to treat them as all parts of one vast and continuous business operation. *Geneva Steel Co. v. State Tax Commission,* 209 P. 2d 208 (Utah) seems to me to recognize the unique and hence isolated character of the sale of an entire industrial plant.

I think the order of the Circuit Court should be affirmed.