## CANTON COMPANY OF BALTIMORE *v.* COMPTROLLER OF THE TREASURY

[No. 202, September Term, 1962.]

*Decided April 11, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ.

*Francis D. Murnaghan, Jr.,* with whom were *Venable, Baetjer & Howard* on the brief, for appellant.

*Thomas B. Finan, Attorney General,* and *Edward F. Engelbert, Chief, Retail Sales Tax Division,* with whom was *Joseph S. Kaufman, Deputy Attorney General,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order affirming an assessment by the Comptroller of sales taxes upon rentals paid to the appellant

company by its wholly owned subsidiary, Cottman Company, for bulk unloading facilities located on a pier in the Baltimore harbor. The assessment concerns taxes for the period from June 1955 to June 1960 which the Comptroller claims should have been paid by Cottman, the stevedoring company, the tax collecting duty resting upon Canton. The lease to Cottman from Canton was entered into on October 31, 1931, at which time Canton had only a minority interest in the lessee. The lease included bridge cranes located on an ore pier owned by Canton. On that date the cranes were purchased from Cottman by Canton, and simultaneously leased to Cottman. Canton Railroad Company joined in the lease, having certain operating rights for the pier under a separate agreement. The primary rental was 12 cents per ton on cargo handled by Cottman through use of the cranes.

The appellant raises three questions on this appeal:

1. Are bulk commodity unloading cranes, and related facilities located on Canton's ore pier, tangible personal property within the meaning of the Maryland Retail Sales Tax Act?

2. Does the Act reach transactions that are genuine rentals of personal property and not sales of personal property disguised as lease transactions?

3. Is the attempted imposition of the tax a burden on foreign and interstate commerce prohibited by the Federal Constitution?

As to one, a number of supplemental agreements continued the lease in effect through the assessment period. None of these agreements was recorded, nor was any instrument governing title to the cranes recorded among the land records. Two of the cranes were located on the pier in 1931, and a third was installed by Canton in 1953. A fourth crane was installed in 1957. Crane No. 1 was dismantled and removed in 1960, and the parts sold for scrap. Crane No. 2 weighs approximately 800 tons, No. 3 and No. 4 weigh about 1150 tons each. The ore pier is used entirely for unloading vessels by Cottman Company, nearly 98% being foreign commerce, 2% interstate commerce. The cranes were mounted on rails, but could not leave the pier. They were specially designed for that location, and not suitable for use elsewhere.

The appellant argues that the cranes must be regarded as fixtures, and hence not subject to the tax on sales of tangible personal property. We do not agree. It may well be that if the question were whether they were subject to the terms of a mortgage, they could be regarded as constructively annexed to the real estate. See *Anderson v. Bldg. & Loan Ass'n,* 172 Md. 94. For present purposes, we would agree that they are an integral part of the pier operation, cannot be moved without dismantling by cutting the metal, and are not well adapted to general use elsewhere, if, indeed, they would be salable except for scrap. Nevertheless, we think the case of *Comptroller v. Kaiser Corp.,* 223 Md. 384, 391, is controlling. While the decision in that case was rested, in part, on the fact that the presses, compressors and cranes could be removed and installed at another location, the holding was also rested upon a construction of the statute that imposed the tax upon machinery and equipment, without regard to the doctrine of constructive annexation. We also stressed the fact that in that case, as in this, there had been a course of conduct by the parties, whereby the property had been treated as personalty. We also cited the common law rule, applicable to the taxation of property, as laid down in *Anne Arundel Co. v. Sugar Ref. Co.,* 99 Md. 481.

The assessment was made under Code (1957), Art. 81, Sec. 325, imposing the tax "[f]or the privilege of selling certain tangible personal property at retail as defined above * * *." By Sec. 324 (d), sale was defined as "any transaction whereby title or possession, or both, of tangible personal property is or is to be transferred by any means whatsoever for a consideration *including rental, lease or license to use, or royalty,* by a vendor to a purchaser * * *." (Underscored matter added in 1955). The argument of the appellant that the amendment should not be construed to cover a true rental agreement like that in the instant case is answered, in part, by our decision in *Comptroller v. Pittsburgh-Des Moines,* 231 Md. 132. The argument that it could not have been intended to impose a tax upon a transaction whereby the right to possession was transferred in 1931, even if this were constitutionally possible, is answered by the fact that, in substance if not in form, the right of possession is

made to depend upon the periodic payment of rent, and since taxation is a practical matter, the Legislature may treat continuance of possession as a taxable event. Other courts have so held. See *Gandy v. State,* 359 P. 2d 302 (Wash.), *Richard Bertram & Co. v. Green,* 132 So. 2d 24 (Fla.), *Central Transportation Co. v. Atkins,* 305 S. W. 2d 940 (Tenn.) and *Broadacre Dairies v. Evans,* 246 S. W. 2d 78 (Tenn.). See also *United Artists Corp. v. Taylor,* 273 N. Y. 334, 7 N. E. 2d 254.

In concluding that the Legislature intended to tax rentals of this nature we also rely upon the fact that other amendments in 1955 specifically exempted certain rentals and recurrent services, and to certain indications in the title of the act, to which we may look as bearing upon legislative intent. *Kimball-Tyler v. Balto. City,* 214 Md. 86, 96.

Finally, the appellant contends that the tax is in violation of the Federal Constitution, as a burden on interstate and foreign commerce, and as contravening the import-export clause. We do not so read the cases. It is true that Cottman Company is the taxpayer, Canton merely the collecting agent. But if Cottman bought a crane today, or any other article of personal property, the fact that it was intended to be used tomorrow for unloading vessels would not render Cottman immune from the levy of a sales tax. See *McGoldrick v. Berwind-White Co.* 309 U. S. 33. See also *McLeod v. Dilworth Co.,* 322 U. S. 327 and *Gen. Trading Co. v. Tax Comm'n,* 322 U. S. 335. Cf. *S. T. C. of Utah v. Pac. States Pipe Co.,* 371 U. S. 810. Of course, a tax could not be imposed directly upon the stevedoring operation. See *Puget Sound Co. v. Tax Comm'n,* 302 U. S. 90, *Canton R. Co. v. Rogan,* 340 U. S. 511, and *Joseph v. Carter & Weekes Co.,* 330 U. S. 422. Cf. *Richfield Oil Corp. v. State Board,* 329 U. S. 69. The appellant admits in its brief that the question turns on whether the title or right to use the cranes was acquired prior to and independently of the transferee's activities in interstate and foreign commerce, or whether the taxable event is the use in those activities. We think it is the former, even though the amount of rent, and hence the economic incidence of the tax, may be measured by the tonnage handled. It does not follow that because the rental is measured by the

amount of use, the tax is on the use. The tax is on the continued right to possession of the leased property. We are referred to no case, and we have found none, that forbids the imposition of such a tax.

*Judgment affirmed, with costs.*