## ACF INDUSTRIES, INC. *v.* COMPTROLLER OF THE TREASURY

[No. 353, September Term, 1969.]

*Decided April 3, 1970.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Allen L. Schwait* and *William B. Rafferty*, with whom were *Miles & Stockbridge* on the brief, for appellant.

*William J. Rubin, Special Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General* and *Jon F. Oster, Assistant Attorney General* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The Maryland Tax Court held ACF Industries, Inc. liable for sales taxes on tangible personal property it sold when it closed out two divisions through which it was conducting ventures in businesses different in kind from its principal businesses, and the Circuit Court affirmed.

ACF, a New Jersey corporation with headquarters in New York City, manufactures and leases railroad cars and manufactures and sells carburetors, fuel pumps and valves. Some years ago it became a victim of the epidemic of corporate diversification fever — indeed, the fever began to approach the conglomerate stage—and entered the field of research, design and development of electronic detection devices for the Navy by assembling a body of engineers and scientists to operate an electro-physics laboratory at Bladensburg in Prince George's County. It became apparent that to remain competitive, it would be necessary to manufacture as well as develop the electronic devices and that if this were to be done,

substantial capital would be required. Thereupon, in 1966 ACF sold the entire business to International Telephone and Telegraph Corporation, which already had conglomerate fever, for 21,000 shares of I. T. & T. stock.

ACF engaged in another venture in Prince George's County by buying the business of Engineering and Research Corporation (Erco), which was engaged in Riverdale in the design and manufacture of highly sophisticated flight simulators used by the Armed Services. ACF had had no previous exposure to the flight simulators and finally wished things had remained that way, since some nine years after it began to operate the Erco division with its own manager, books and customers it accepted a Navy contract which ultimately resulted in a loss of about $7,000,000. Foreseeing this loss was enough for ACF and it sought to sell the Erco division. General Precision Company, which was interested in acquiring technological capability and engineers experienced in the field, bought the business and leased the plant and equipment. Eventually the personal property used in the simulator operations was bought by General Precision, which continued the business at its plant at Silver Spring.

The taxes imposed on the I. T. & T. sale with interest and penalties, totalled $5,923.65 and similar taxes on the General Precision lease totalled $9,100.71. The accuracy of these amounts is not in dispute.

All of the recited facts were stipulated. In addition, the head of the tax department of ACF gave testimony which the Tax Court summarized as follows:

> "* * * that during the past thirteen years, A.C.F. acquired and sold, or otherwise disposed of, five separate business activities, including the two now in question; that A.C.F. sold and still sells tangible personal property in Maryland in the regular course of its business; that from time to time, it also sells used and obsolete plant equipment and machinery; that it has retained one other diverse business activity aside

from the five it has disposed of; that its entire business operation includes thirteen plant sites; that old plants are abandoned, from time to time and new ones are acquired; that it did not form or maintain separate corporations for either of the business activities now in question; that A.C.F. has not re-entered either of these business fields and has no present intention of doing so in the future * * *."

The exemption provision of the sales tax statute on which ACF relies (§ 326 (e) of Art. 81) read thus in 1965 and 1966:

"[Exempted are] Casual and isolated sales by a vendor who is not regularly engaged in the business of selling tangible personal property and the use of an auctioneer shall not make a sale taxable which otherwise is not taxable under this subsection * * *." [1]

ACF argues, relying almost solely on *Comptroller v. Thompson Trailer Corp.*, 209 Md. 490, that the exemption applies to sales of "separate and independent businesses" of a taxpayer who remains in business after the sales and therefore the lower courts erred in holding that the sales by ACF were part of a "planned series of transactions" and therefore were not casual and isolated sales. We think ACF attempts to build on a quagmire.

First and fundamentally under § 326 (e) of Art. 81, to be exempt the sale not only has to be "casual and isolated" but made by a vendor "who is not regularly engaged in the business of selling tangible personal property." The Tax Court found, and the finding is not challenged, that "ACF sold and still sells tangible personal

---

1. By Ch. 424 of the Laws of 1969 the legislature amended § 326 (e) of Art. 81 by striking from it the words "and the use of an auctioneer shall not make a sale taxable which otherwise is not taxable under this subsection," and by adding the words "provided, however, that this exemption shall not apply to casual sales for amounts of $1,000 or more, and/or which are made through an auctioneer or other regular dealer."

property in Maryland in the regular course of its business," as well as that "from time to time, it also sells used and obsolete plant equipment." Thus, ACF lacks an essential requisite for qualifying as an exempt vendor. In his dissenting opinion in *Comptroller v. Kaiser Corp.*, 223 Md. 384 at 393, Chief Judge Brune argued that the sale there involved was casual and isolated, saying:

> "There are, of course, two elements to the exemption: (1) the sale must be 'casual and isolated;' and (2) the vendor must not be regularly engaged in the business of selling tangible personal property. The Court seems to concede that the second requirement is met when it says that 'for present purposes we may assume that its [the Government's] activities [in selling surplus personal property] could not fairly be described as doing "business", since it was not motivated by a desire for profit.' "

We think Judge Brune correctly recognized that in *Kaiser* the Court would have had to have found and would have found the sale taxable if the vendor had been regularly engaged in the business of selling tangible personal property, regardless of whether the sale was casual and isolated in relation to things regularly sold, for the Court in *Kaiser* said (at p. 389 of 223 Md.) : "Even in the case of sales outside the regular course of business, we think it is clear that the tax is collectible, unless it be shown that the particular transaction is casual and isolated."

In *Thompson Trailer* the vendors who were engaged solely in the woodworking business sold their plant, machinery and equipment as part of their plan to retire completely from business. Liquidation was slowed when a bid the vendors had made in a joint venture with another business entity, a metal working concern, unexpectedly was accepted by the Government, and to avoid great loss, the bidders had to fulfill their contract and did so by renting space at another plant and hiring new employees.

Once the contract was completed the vendor's liquidation was fully completed. ACF argues that *Thompson Trailer* holds that the exemption applies to the "liquidation of *a* business rather than liquidation of a business entity *per se* * * *." It goes on to argue that "alternatively, * * * the Court held that even if [the vendors] had two businesses, the sale of one was not made in the ordinary course of business and, therefore, was exempt from the sales tax as a casual and isolated sale." We think ACF misreads *Thompson Trailer*. That case did not hold that the sale of one kind of business by an entity that did other kinds of business was not subject to tax. It dealt with the only business of the vendors. The Court said (p. 501 of 209 Md.):

> "One is not engaging in business when he is liquidating, unless he holds himself out to the public as conducting the business. * * * The sale was by one not regularly engaged in business within the meaning of the statute since the seller was in liquidation [of its sole business]. * * * It was a sale clearly not in the ordinary course of the business * * *, *one never to be repeated*." (Emphasis added.)

The holding of *Thompson Trailer* on the point and the extent of the scope of that holding has been twice delineated by this Court. In *Maryland Glass Corp. v. Comptroller*, 217 Md. 241, 245, Judge Henderson for the Court said:

> "In *Comptroller of Treas. v. Thompson Trailer Corp.*, 209 Md. 490, 502, relied on by the appellant, the gravamen of the decision on the point was that the sale 'was in conjunction with the complete liquidation of the only business of [the vendors] at the time of the sale' and never to be repeated."

In *Comptroller v. Kaiser Corp.*, referred to earlier, the

Court at p. 388 of 223 Md. amplified the earlier comment, saying:

"[In *Thompson Trailer*] we held that the sale was by one not regularly engaged in business within the meaning of the statute, and was a casual and isolated sale, since *the seller* was in liquidation and the sale was in conjunction with a complete liquidation of the only business of the vendor at the time of the sale. We also stressed the fact that on the record in that case the sale was, never to be repeated, since *the vendor* was going out of business and winding up its operations."

From the record in this case it is clear that in thirteen years ACF had sold five separate business activities, that it retains one such diverse activity, that in addition to regularly selling tangible personal property from time to time it sells used machinery and equipment, sometimes as it abandons one plant and acquires another. The Tax Court was fully justified on this record in finding that the sales of ACF were not casual or isolated but rather part of a pattern that could be expected in a corporation that undertakes to diversify. The case before us falls under the holding of *Kaiser* that sale of an integrated plant by the General Services Administration (successor to the War Assets Administration) was not a casual and isolated sale since many sales of surplus property acquired for the prosecution of war had been made by the agency after the war ended.

> *Order of the Circuit Court for Prince George's County affirming the denial by the Maryland Tax Court of ACF's claim for refund of $15,024.36 is affirmed, costs to be paid by ACF.*