537 A.2d 607

COMPTROLLER OF THE TREASURY, RETAIL SALES TAX DIVISION

v.

STEUART INVESTMENT COMPANY.

No. 79, Sept. Term, 1987.

Court of Appeals of Maryland.

March 1, 1988.

Linda Koerber Boyd, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Deborah B. Bacharach and Gaylin Soponis, Asst. Attys. Gen., on the brief), Baltimore, for appellant.

John J. Ghingher, III (W. Lawrence Wescott II and Weinberg & Green, Baltimore, and Robert V. Smith, Washington, D.C., all on the brief), for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

In this retail sales tax case we hold that the respondent's liquid storage tanks having capacities ranging from 50,000 to 500,000 barrels are to be classified as real property and not as personal property.

Respondent, Steuart Investment Company (Steuart), owns a deep water petroleum terminal covering approximately 300 acres at Piney Point in St. Mary's County. Standing on the premises are thirty bulk liquid storage tanks. Steuart leases the terminal, including land, pier facilities, bulk storage tanks, buildings and interconnecting pipes to its subsidiary, Steuart Petroleum Company. The Comptroller of the Treasury in November 1981 assessed Steuart for delinquent sales tax for the period October 1, 1977, through September 30, 1981, together with interest and penalty, on the theory that the storage tanks were personal property and that Steuart had a duty to collect and remit sales tax on the rental.[1] On Steuart's appeal from the Comptroller's affirmation of the assessment the Maryland Tax Court concluded that the storage tanks are real property and abated the assessment. The Circuit Court for St. Mary's County affirmed the Tax Court and the Court of Special Appeals, in an unreported opinion, affirmed the

---

1. No issues concerning allocation of the rent are presented.

circuit court. We granted the Comptroller's petition for certiorari which raised the following question:

Whether the Court of Special Appeals erroneously applied the doctrine of fixtures and held that bulk petroleum storage tanks that are not affixed to the realty and that are commercial equipment are real property?

The facts of the instant case are undisputed and permit but one legal conclusion. The tanks are of two types, one having a floating roof and the other utilizing a fixed or cone roof. The four largest of the cone roof type each has a capacity of twenty-one million gallons. These tanks measure 310 feet in diameter and stand 38 feet high. When empty they weigh 3.297 million pounds each and when filled weigh 172.452 million pounds each. The smallest of the cone roof type, of which there are three, have a capacity of 2,310,000 gallons each. They respectively measure ninety feet in diameter and stand forty-eight feet high. When empty a tank of this size weighs 386,598 pounds and when filled weighs 19.799 million pounds. There are in addition two cone roof type tanks, each having a capacity of 11.676 million gallons, two of 11.256 million gallons, eight of 6.3 million gallons and four of 4.032 million gallons. Out of the total of thirty tanks, seven are of the floating roof type. These have a capacity of 4.032 million gallons each. They measure 120 feet in diameter and stand 48 feet high. Each weighs 692,720 pounds when empty and 26.172 million pounds when fully loaded.

Steuart's tanks were constructed at the Piney Point site by techniques similar to those used in constructing buildings. A building permit is required. Soil borings and other soil tests are performed to determine the weight-bearing capacity of the soil which may be improved by pilings, although that was not required at Piney Point. The site is graded to create a level surface. A foundation is constructed consisting of a concrete ring wall backfilled with compacted sand and gravel. The tank floor is welded together on the foundation and the sides are erected using special erecting and welding equipment. For fixed roof tanks

supporting columns are raised from the tank floor, rafters are constructed and the roof plates are welded together to complete construction. In the floating roof type of tank the roof rests on the surface of the stored liquid.

A tank is not fastened by any physical device to its foundation. It is not necessary to do so because of the great size and weight of the tanks. They are designed to withstand winds of 110 miles per hour. Each of the tanks is connected with the piping system and the pipes themselves are either buried beneath the ground or attached to concrete footings by U-bolts and clamps.

There is no economically feasible way in which any of the tanks could be moved as a whole to another site. The tanks would have to be cut apart with acetylene torches, the component parts moved to a new site and the tank reconstructed.

The useful life of the tanks is between thirty and fifty years. Although they are currently used for storing petroleum products they can be used to store virtually any liquid product as well as other types of commodities.

For purposes of the property tax the State Department of Assessments and Taxation has, since 1978, assessed the tanks as real property.

Among its findings and conclusions the Tax Court said that the tanks' "great weight and size make it impossible for the normal forces of nature to move them," that the "tanks are ... adapted to the use of the realty to which they are connected," and that Steuart "apparently intends the tanks to be permanent accessions to the freehold."

Maryland Code (1957, 1980 Repl. Vol.), Art. 81, § 324, presents the definitions under the Retail Sales Tax Act. In subsection (d) "sale" is defined to mean "any transaction whereby title or possession, or both, of tangible personal property is or is to be transferred by any means whatsoever for a consideration including rental, lease or license to use...." "Tangible personal property" under § 324(e)

means "corporeal personal property of any nature." Corporeal personal property is not statutorily defined.

The Comptroller, however, has adopted a regulation which deals with "Real Property Construction, Improvement, Alteration, and Repair." Md. Regs. Code tit. 18, § 03.06.01.53 (1982). In general this regulation places upon a building contractor the obligation to pay a sales tax on materials purchased which will be resold in the form of real property. Subsection C of the regulation then addresses the "Determination of Material as Real Property." It provides in relevant part:

(1) The determination of whether material installed or annexed to real property will become a part of the real property depends principally upon the object or purpose of the installation or annexation.

(2) If the object or purpose is to permanently and substantially improve land, a building, or other real property, the material will be considered to have become real property. An installed or annexed item which is an integral, necessary, and expected part of residential property constitutes a permanent and substantial improvement to the real property.

(3) If the object or purpose is temporary, that is, for the enjoyment or use of the material as a chattel or personalty, the material will be considered to retain its character as tangible personal property. Commercial machinery and equipment retains its character as tangible personal property without regard to the method or permanency of its annexation to real property.

Here Steuart's object or purpose in constructing the bulk storage tanks was permanently and substantially to improve the land and, under the Comptroller's own regulation, the tanks are realty. The fact that the construction did not employ the physically superfluous technique of bolting the tanks to the concrete foundations is legally irrelevant when dealing with structures as massive as those described in this case.

In terms of the above-quoted regulation the Comptroller's position is that the storage tanks fall under the concept of "[c]ommercial machinery and equipment" in subsection C(3) of Reg. 03.06.01.53. As we understand the argument this result is said to be ordained by the holding in *Anne Arundel County v. Baltimore Sugar Refining Co.*, 99 Md. 481, 58 A. 211 (1904). The Comptroller further submits that the sheer size of the tanks involved here does not alter the result under *Sugar Refining*. For this latter proposition the Comptroller relies upon *Canton Co. v. Comptroller*, 231 Md. 294, 190 A.2d 92 (1963).

*Sugar Refining* involved a corporation doing business in Anne Arundel County whose property there had been assessed by the county commissioners. They had classified the property into land, buildings and personal property. The taxpayer challenged placing any assessment whatsoever on its personal property, which consisted of "machinery used in said buildings." 99 Md. at 482, 58 A. at 211. Under the then-existing ad valorem tax on shares of capital stock, which the taxpayer paid, the net valuation of the shares included the value of personal property and the taxpayer's personal property was exempt from the tax imposed directly on tangible personal property. Anne Arundel County then apparently changed its position and contended that the machinery had been affixed to the land and was taxable as real property.

The Court concluded that under the common law rule, in effect in Maryland, the machinery was personal property. The essence of the discussion is as follows:

> The classification of property for taxation, as real or personal, is usually made on common law distinctions, though by statute it may be otherwise provided. *Cooley on Taxation*, p. 366. "At common law, fixed and movable machinery are alike regarded as personal property." *Steere v. Walling*, 7 R.I. 317. In that State, a statute so far altered this rule of the common law in that respect, as to declare that for purposes of taxation, fixed machinery should be regarded as real estate when owned by the

owners of real estate to which it is affixed. But in Maryland there is no such statute. The doctrine of fixtures, as between vendor and vendee, lessor and lessee, mortgagor and mortgagee, though recognized here as to these parties, has never been imported into the law of taxation. We do not doubt that as between these, this machinery would be held to be part of the realty, but it by no means follows that it should be so held here. The mere fact that a building is constructed and adapted expressly to receive certain machinery, does not necessarily make the machinery part of the realty. ... So, also, there is a clear distinction running through the best considered cases, between machinery furnishing the motive power of the establishment, and that which is accessory only to the business then carried on. ... [A]nd this distinction seems to be suggested in *McKim v. Mason*, 3 Md. Ch. 202, where Chancellor Johnson cites the language of Baron Parke in *Hellawell v. Eastwood*, 3 Eng. Law & Eq. 562, in which he says "the question depends principally on the object and purpose of the annexation, whether it was for the permanent and substantial improvement of the *building*, in the language of the civil law, *perpetui usus causa*, or merely for a temporary purpose, or the more complete enjoyment and use of the machine *as a chattel*." [99 Md. at 484–85, 58 A. at 212.]

*Sugar Refining* was concerned with the relationship of machinery to a building whereas in the instant matter we are concerned with the relationship of a structure to the land. From the standpoint of scale the instant case would be more analogous to *Sugar Refining* if the issue were whether pumps attached to the subject tanks were realty or personalty. Nevertheless, when the tests enunciated in *Sugar Refining* are applied to the order of magnitude involved here the resulting classification of the tanks as real property is beyond debate. The tanks are permanent and substantial improvements of the land and they are neither installed for a temporary purpose nor for use as a chattel. Rather they are used for bulk storage of liquids in

the same way in which a warehouse building is used for the storage of nonliquid goods.

The Comptroller finds support in *Sugar Refining*'s statement that the law of fixtures has never been imported into the Maryland law of taxation. The import of that statement was explained by Judge Finan for this Court in *State Dep't of Assessment & Taxation v. Town & Country–Woodmoor, Inc.*, 256 Md. 584, 261 A.2d 168 (1970). In holding that dishwashers and garbage disposal units installed in a complex of 424 residential apartments were part of the realty, this Court said:

> One cannot read the decision in *Sugar Refining Co.*, written sixty-five years ago, with any meaning, without viewing it against the historical background of preferential tax treatment, by way of exemptions, afforded machinery involved in manufacturing processes and the influence which such a practice had upon court decisions. Cf. *Kimball–Tyler v. Baltimore City*, 214 Md. 86, 90–93, 133 A.2d 433 (1957). An awareness of the economic impact on a given plant or industry, resulting from the classification of manufacturing machinery as realty, was the reason that the common law rule, long recognized in Maryland, categorized such machinery as personal property without regard to the nature of its annexation. Against such a background, we think the Tax Court and the lower court were correct in differentiating between machinery used in a manufacturing plant (*Sugar Refining Co.*) and fixtures in an apartment dwelling designed solely for residential use. [256 Md. at 587–88, 261 A.2d at 170.]

In the instant matter we are not concerned with manufacturing. There is no statute or policy here which dictates treating these tanks as other than improvements to the land.

The Comptroller also argues that the tanks are used by Steuart for conducting its business of selling petroleum products and are thus "[c]ommercial machinery and equipment." This argument rests exclusively on the concept of

commercial use and proves too much. It would mean that any special purpose building used in a business would be personal property.

Finally, the Comptroller denies, relying on *Canton Co. v. Comptroller, supra,* that the magnitude of the tanks' size prevents a commercial equipment classification. In *Canton* the Comptroller successfully assessed a sales tax on the rents paid by a stevedoring company which leased three giant cranes installed on a pier in the Baltimore harbor. One crane weighed 800 tons and the other two 1,150 tons each. The cranes moved on tracks up and down the length of the pier in order to deposit ore taken from ships onto conveyor belts at a weighing station at the end of the pier. They could not leave the pier unless they were dismantled by cutting the metal, they were not well adapted to general use elsewhere, and they would not be saleable except for scrap. This Court sustained the Comptroller's assessment on the ground that the case was controlled by *Comptroller v. Kaiser Aluminum & Chemical Corp.,* 223 Md. 384, 164 A.2d 886 (1960).

*Kaiser* dealt with heavy machinery and equipment which had been purchased from the United States in the surplus property sale of an aluminum extrusion plant. "The record [in *Kaiser* made] it clear that the machinery, though consisting of heavy presses and compressors, mounted on concrete and anchored to the floor with bolts, can be removed without damage to the building itself and installed at another location without damage to the machinery." *Id.* at 390–91, 164 A.2d at 890.

In *Canton* this Court compared *Kaiser* to *Canton* in the following manner:

> While the decision in [*Kaiser*] was rested, in part, on the fact that the presses, compressors and cranes could be removed and installed at another location, the holding was also rested upon a construction of the statute that imposed the tax upon machinery and equipment, without regard to the doctrine of constructive annexation. We also stressed the fact that in that case, as in this [*i.e.,*

*Canton* ], there had been a course of conduct by the parties, whereby the property had been treated as personalty. We also cited the common law rule, applicable to the taxation of property, as laid down in *Anne Arundel Co. v. Sugar Ref. Co.*, 99 Md. 481 [58 A. 211]. [231 Md. at 297, 190 A.2d at 94.]

*Canton* certainly supports the Comptroller's view that size alone does not determine the classification between realty and personalty. Yet, with respect to Steuart's bulk storage tanks *Canton* is most instructive. Canton Co. rested its legal argument principally on an opinion of the Attorney General of Maryland of August 30, 1954, 39 Op. Att'y Gen. 312, advising the Retail Sales Tax Division that bulk storage tanks interconnected by pipelines were realty. No. 202, Sept. Term, 1962, Appellant's Brief at 11. That Attorney General's opinion emphasized that the tanks could not be moved without disconnecting and rearranging the pipe system and that the interconnections evidenced an intention that the tanks should remain indefinitely a part of the realty. *Id.* at 317.[2] The Comptroller responded to Canton Co.'s argument with an analysis which applies to, and is dispositive of, the instant matter:

> The argument made by [Canton Co.] here completely ignores the fact that the oil storage tanks are not machinery, but are, in fact, warehouses for the storage of liquid

---

2. In an opinion of May 2, 1972, to the Retail Sales Tax Division, the Attorney General overruled the 1954 opinion. 57 Op. Att'y. Gen. 668. The 1972 opinion dealt with storage tanks for the fuel used to run generators at an electric generating plant. At least part of the Attorney General's reasoning was that machinery and equipment used for manufacturing are to be considered tangible personal property without regard to the method and permanency of the annexation of the property to the realty. *Id.* at 671–72. Then, in an unpublished opinion of February 11, 1974, by an Assistant Attorney General to the Retail Sales Tax Division, it was concluded that the manufacturing factor had not been essential to the opinion expressed in 1972. It is the 1974 unpublished, "one signature" opinion on which the hearing officer primarily relied at the level of agency review of the assessment in this case.

products. [No. 202, Sept. Term, 1962, Appellee's Brief at 11.]

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE COMPTROLLER OF THE TREASURY.